JACK L. BEHRMAN, Suing on Behalf of Himself and All Other Stockholders of the LUZERNE HOTEL CORPORATION, Plaintiff, *v.* REUBEN ZELMAN and Others, Defendants.

Supreme Court, Warren County, December 15, 1927.

Corporations — mortgages — stockholders' representative action to cancel mortgage — mortgage was given to former president to cover advances and on his agreement to resign as president and director and transfer his stock holdings — stockholders' meeting called on waiver of notice was not called for purpose of giving authority to execute mortgage — all stockholders were present and consent to mortgage was given by all — rights of creditors not involved — stockholders estopped from questioning validity of mortgage — fact that mortgage may have been given as security for debt of third person does not, under facts, justify cancellation — plaintiff took stock with full knowledge of all transactions.

This is a stockholders' representative action to cancel a corporate mortgage given by a hotel corporation to one of the defendants who was formerly a director and president of the corporation. The mortgage was authorized at a meeting of the stockholders called on waiver of notice, at which meeting all of the stockholders were present. The fact that the meeting was not called for the purpose of voting upon the question of mortgaging the corporate property does not give the plaintiff, who acquired his stock after the mortgage was given, the right to cancel the mortgage on the ground of lack of authority to execute the same, for the rights of creditors are not involved and all of the stockholders consented to the execution of the mortgage. The transferee of stock is estopped from questioning the validity of the mortgage which was given to secure advances made by the president under an agreement whereby he resigned as president and director of the corporation and transferred all of his stock holdings.

Furthermore, the execution of the mortgage prevented dissolution of the corporation and the corporation has received the benefits of the mortgage, and where the rights of creditors are not involved the courts are not inclined to cancel a mortgage on the technical ground of lack of authority to execute the same.

There was ample consideration for the mortgage where defendant turned over to others in attendance at the meeting, at which the mortgage was executed, all evidences of obligations which he held against the corporation, its stockholders and officers.

The fact that the mortgage may have been given as security for a debt of a third person does not necessarily relieve the corporation of liability, for the apparent benefits from the transaction accruing to the corporation and the assent of the stockholders estops them from questioning the corporation's right to mortgage its property for the benefit of another, provided the public was not affected.

The fact that plaintiff took stock with full knowledge of all the facts and circumstances surrounding the sale and transfer does not warrant a finding that plaintiff exercised good faith in the transaction, and consequently he is not entitled to relief.

STOCKHOLDERS' representative action to cancel corporate mortgage.

Action by the plaintiff suing on behalf of himself and all other stockholders of Luzerne Hotel Corporation to cancel a mortgage given by the corporation to the defendant Helitzer on the grounds:

(a) That the mortgage was executed as collateral security for the debt of a third party; (b) that the said act was *ultra vires* and void, and (c) that the corporation received no consideration for the same. All of the defendants defaulted excepting the defendant Helitzer.

*Leslie J. Tompkins,* for the plaintiff.

*Jenks & Rogers* [*Gustavus A. Rogers* and *Abraham Benedict* of counsel], for the defendant Helitzer.

GOLDSMITH, J.   On June 16, 1924, the Luzerne Hotel Corporation was organized with an authorized capital of $25,000, to consist of 250 shares of common stock of the par value of $100 each. The corporation thereafter acquired by purchase the Wayside Inn property, located in the town of Luzerne, Warren county, State of New York, together with the furnishings, and gave back thereon a bond and mortgage in the sum of $17,750.

In May, 1925, the defendant Marcus Helitzer was the sole owner of the issued capital stock of the corporation, admitted to be two hundred and forty shares. About that time he sold eighty shares of the stock to Isadore Solomon and eighty shares to Herman Goldschmitz. Solomon paid cash for his stock while Goldschmitz paid part cash and gave notes to the amount of $8,000 in payment of the balance and delivered his certificate of eighty shares to Helitzer as collateral security for the payment of the notes. Helitzer remained the owner of eighty shares of the capital stock of the corporation. At this time the officers of the corporation were Elmer J. Weaver, president; Marcus Helitzer, treasurer; Herman Metzner, secretary.

On June eighth Helitzer, Solomon and Goldschmitz, being owners of all of the issued capital stock, entered into an operating agreement providing substantially (a) that, if one of the parties desired to sell his interest, he should first offer the stock " to the corporation or to the party or parties hereto;" (b) that each was to have an agreed vote, but no two were to oust the other as an officer; (3) that during 1925 Solomon and Goldschmitz were to have general supervision of the hotel business with salaries fixed for this period; (4) " No important business change shall be made by said corporation without the consent of all the parties hereto." On the same day Isadore Solomon, in a signed statement, declared that he had transferred all of his stock holdings in the corporation to his daughter Doris Solomon, but that he would consent to act as treasurer of the corporation. This transfer was not recorded upon the books of the corporation until October 15, 1927.

On July 20, 1925, at a meeting attended by all of the stockholders

of the corporation, the officers heretofore acting resigned and the following were elected as successors: Marcus Helitzer, president; Isadore Solomon, treasurer; Herman Goldschmitz, secretary.

The hotel was opened and operated during the summer of 1925. There was dissension from the beginning between all parties interested and at the end of the season there was a substantial loss and many unpaid bills. Helitzer and Solomon each advanced the sum of $2,000 to pay these bills and took the corporation notes for the loans.

Helitzer was dissatisfied with the management during the season of 1925 and informed Solomon and Goldschmitz that he would not allow the hotel to run under the same conditions during the next summer, and would not furnish any more money for operating expenses. He told them that if they attempted to conduct the hotel during the coming season he would apply for the appointment of a receiver to take over the property and he suggested that they secure a purchaser of his interest. This was the situation as the season of 1926 approached. In May of that year a broker produced one Max Gootnick, who was understood to be in a position to finance the business and who agreed to buy Helitzer's interest in the corporation for the sum of $20,000, payable $2,000 in cash and the balance in installments. A written instrument purporting to be an agreement by the parties thereto to carry out this sale was thereupon signed by Marcus Helitzer, Doris Solomon, Max Gootnick, Herman Goldschmitz and Isadore Solomon under date of May 26, 1926. This paper provided that all the deferred payments should be secured by the real and personal property of the corporation if a mortgage could be legally given upon the corporate property.

Subsequently, on June 14, 1926, at a meeting of the corporation held upon written waiver of all the stockholders and directors of the corporation, and all the stockholders of record and officers being present, the unsatisfactory condition of the affairs of the corporation were discussed. Solomon stated, as appears from the minutes, " that he believed that the affairs of the corporation could be carried on to a better advantage if President Helitzer resigned as president and director of the corporation and disposed of his holdings to Mr. Max Gootnick." It further appears from the minutes that Helitzer stated that the corporation was indebted to him for large advancements made for its credit and he would accept " from the corporation the sum of $18,000 in payment of all such sums and would transfer all his stock and other interests in the corporation to Mr. Max Gootnick and would resign as president and director of the corporation, and that he would accept

a mortgage on the real and personal property of the corporation for the sum of $18,000." A motion was carried that the offer be accepted and that the treasurer execute a bond and mortgage to consummate the agreement. Helitzer then tendered his resignation as president and Gootnick was elected in his place and took over the meeting. The bond and mortgage in the sum of $18,000 were immediately executed and delivered to Helitzer and the mortgage was recorded in the Warren county clerk's office on the following day. An estoppel certificate in respect to the mortgage, unacknowledged, however, was signed on June 14, 1926, by Max Gootnick, Herman Goldschmitz, Isadore Solomon and Doris Solomon.

Max Gootnick left the corporation as suddenly as he joined it, for on June 17, 1926, three days after he became president, he resigned his office and one Rubin Zellman, " who recently acquired by assignment 80 shares of the capital stock," was elected president in his stead.

Helitzer was out of the corporation and never had any further connection with it. The hotel was operated during the seasons of 1926 and 1927 by the Solomons, Goldschmitz and Zellman. According to the terms of the mortgage given to Helitzer, the first installment of principal and interest was to become due September 10, 1927.

There never had been any protest made or action taken in reference to this mortgage by the corporation or any of the stockholders until the summer of 1927, when the plaintiff in this action, claiming to be a stockholder, demanded that the mortgage be canceled and instituted this action for such purpose. He claims that he purchased seventy shares of stock from Doris Solomon, who held under assignment her father's certificate of eighty shares, although no transfer had ever been made upon the books of the corporation, and he claims that he purchased ten shares of the treasury stock of the corporation, being presumably the ten shares that had never been issued out of the authorized two hundred and fifty shares. He testified that he paid $1,000 cash for the ten shares of treasury stock and gave Doris Solomon four notes of $500 each in payment of the seventy shares purchased from her. Why seventy shares should be sold for $2,000 and ten shares should cost $1,000 is not easy to understand. So far as the transactions appear upon the books of the corporation, no transfer was made of the stock or certificates issued until October 15, 1927.

The plaintiff had been a friend of Miss Solomon and her family for some time and was thoroughly familiar through her with the affairs of the corporation. He testified that he purchased the

54

stock for an investment and, therefore, made inquiries and consulted counsel before concluding the transaction. He says that he examined the minute book of the corporation and read the minutes of the meeting held on June 14, 1926, when Helitzer transferred his holdings and accepted the mortgage therefor. Miss Solomon had also told him that the premises were subject to mortgages aggregating approximately $30,000. (In June, 1927, the first mortgage had been reduced to about $13,000, and there was $18,000 due on the Helitzer mortgage.) A few days after he had purchased the stock he was told that the mortgage from the corporation to Helitzer was given without consideration and executed without authority and for that reason he seeks to set it aside for the benefit of himself and all other stockholders.

Pass for the moment over plaintiff's standing in a court of equity and consider the merits of the transaction. On June 14, 1926, after months of dissention and negotiations, all of the stockholders of record in open meeting agreed upon the amount of the indebtedness of the corporation to Helitzer, approved the arrangements for his withdrawal from the corporation and authorized the execution and delivery of the mortgage to him in satisfaction of such indebtedness. The minutes setting forth in detail these transactions were signed by the officers of the corporation and at the same time all of the stockholders of record and Doris Solomon, who claimed to be an assignee of certain shares, signed an estoppel certificate in reference to the mortgage. Suppose the execution of the mortgage were unauthorized, as suggested by the plaintiff, how can its validity be impaired under the circumstances of this case? Creditors were not injured because there were none. " Only the stockholders' private interests were imperiled and they voluntarily and deliberately subjected themselves to this result." (*Santos* v. *National Bank of Glens Falls*, 130 Misc. 348, 351.) Every one having any interest was present and acquiesced in the unauthorized or *ultra vires* act, if it were such. " When the corporation's acts, although exercised without power, do not injuriously affect the public but only the interests of the stockholders, they may be sanctioned by their assent." (*Santos* v. *National Bank of Glens Falls, supra.*) Surely there was nothing *malum in se* or *malum prohibitum* in the transaction. The execution and delivery of the mortgage compromised and satisfied Helitzer's claims against the corporation, acquired all his interests in the corporation and his claims against its stockholders, and saved the corporation from embarrassment and threatened dissolution. The stockholders were anxious to be rid of Helitzer and no one who was a stockholder at the time, nor has the corporation, ever since complained. The stock-

holders were the equitable owners of the corporate property and they could do with it as they pleased, so long as the public was not affected. There was no fraud perpetrated upon any one, every person having any interest being present and acquiescing. The parties cannot now hide behind the cloak of a corporate entity and deliberately repudiate the acts which they openly pursued for their own benefit.

Helitzer insists that there was ample consideration for the mortgage. He and his attorney, who were present at the meeting on June 14, 1926, both testified that Helitzer turned over to the others in attendance all evidences of obligation which he held against the corporation and its stockholders and officers. Helitzer placed everything on a table that was in the center of the room and, after receiving the mortgage and the estoppel certificate, he and his attorney retired. The corporation note of $2,000; the notes of Goldschmitz aggregating $8,000; the eighty shares of stock purchased by Goldschmitz and held by Helitzer as collateral security; the eighty shares of stock owned or controlled by Helitzer; all were turned over to the persons present, together with Helitzer's resignation from the board of directors and as president of the corporation. In addition Helitzer claims that the corporation was indebted to him in the sum of $12,000 for advancements in payment of furnishings and other items and that the cancellation of this indebtedness was a part of the consideration.

Doris Solomon denied the transaction as testified to by Helitzer. She claimed that the alleged indebtedness of the corporation to Helitzer was for furnishings and improvements which he was required to make under an agreement to place the hotel in good condition prior to the occupancy of 1925. She further testified that the corporation had paid many bills which Helitzer was required to pay under this agreement, and that these payments fully canceled any indebtedness to Helitzer, if such existed. Her father, Isadore Solomon, who was treasurer of the corporation, was present throughout the trial but he did not take the witness stand. In view of this conflict of evidence, I believe that the minutes of the corporation are most likely to reveal the truth. The record of the meeting of June 14, 1926, is in evidence. Here was the written expression of the intention and purpose of all the parties and the culmination of their negotiations, subsequently signed by their officers and acquiesced in by them without any change and never disputed or protested by any one of them until this trial. The minutes of the meeting corroborate Helitzer. I, therefore, find the facts as to these matters in favor of the defendant Helitzer.

The plaintiff contends that the mortgage was given by the

corporation as security for the debt of a third person pursuant to the agreement of May 26, 1926, heretofore referred to. If such were so, under the facts of this case the corporation would not be relieved of liability. The apparent benefits from the transaction accruing to the corporation and the assent of the stockholders would estop them from questioning the corporate right to mortage its property for the benefit of another, provided the public was not affected. (*Santos* v. *National Bank of Glens Falls, supra.*) I am not persuaded that the mortgage was given as collateral security. The relation of Gootnick to the transaction is most unusual and suggests that he was a dummy acting for the benefit of the stockholders rather than a party in interest. Three days after his appearance and election as president, he resigned and disappeared from all connection with the corporation. The stock presumably sold to him was never registered in his name on the books of the corporation and within three days was in the possession of Zelman, who at once succeeded Gootnick as president. All of the stockholders were mutually benefited through the mortgage and they expressed their desire to have it given when they entered into the agreement dated May 26, 1926, and later when they voted at the corporate meeting that the mortgage be executed. The stockholders had always treated the corporate property as their own and they were carrying on the hotel business independently of corporate action under the operating agreement made June 8, 1925. This situation does not require the consideration of the extent and refinements of corporate powers. The mortgage was given for the benefit of both the stockholders and the corporation and in accordance with the principles of law heretofore recited, no subterfuge of limitation of capacity to give the mortgage will relieve the corporation from its obligation.

My conclusions give the plaintiff no standing in this litigation. Fully apprised, as I have found, of all of the facts in relation to this mortgage, he took the stock with his eyes open and received just what he expected to get. He is in the same situation in respect to all of the stock purchased, including the ten shares of treasury stock. As to the seventy shares acquired from Doris Solomon, he is charged in addition with all the equities attaching to the stock through her participation in the transactions leading up to the execution of the mortgage. I also feel compelled to state that the circumstances surrounding the sale and transfer of the stock to the plaintiff do not impress me with the good faith of the transactions.

The defendant Helitzer is entitled to judgment dismissing the complaint on the merits.