EMANUEL F. SANTOS, Plaintiff, *v.* NATIONAL BANK OF GLENS FALLS and Another, Defendants.

Supreme Court, Warren County, September 7, 1927.

Corporations — contracts — ultra vires — corporation with unanimous consent of stockholders assumed obligations of partnership — stockholders are estopped to deny validity of transaction — chattel mortgage, part of transaction, will not be canceled — assignment of claim against State will not be set aside.

The plaintiff, a stockholder of the defendant construction company, seeks to set aside a chattel mortgage given by the defendant construction company to the defendant bank and to cancel the assignment of a contract to the bank which the construction company holds with the State of New York. The construction company assumed all obligations of a partnership of which it is the successor and the assumption of the obligations was agreed to by all of the stockholders including the plaintiff. The chattel mortgage was given to the defendant bank as part of that transaction and the assignment was made as further security. Even though the act of the construction company in giving the chattel mortgage and in making the assignment as further security for the payment of the obligations of the partnership were *ultra vires*, the plaintiff has no cause for complaint for he and all the other stockholders authorized the action, acquiesced therein and did not attempt to repudiate it, and there were no creditors at the time except the defendant bank. Accordingly the chattel mortgage will not be canceled.

The assignment of the State contract cannot be the basis of a cause of action for it appears that all money received by the defendant bank thereunder with the exception of $17,990.31 which was placed in a special account, was deposited to the corporation's credit and used by it and that some of the money in the special account was necessarily expended in completing the contract while the remainder is still held intact by the defendant bank.

ACTION to set aside a chattel mortgage, to cancel the assignment of a contract, and to require the defendants to account.

*Charles E. Hardies*, for the plaintiff.

*J. Edward Singleton* for National Bank of Glens Falls.

*James S. Kiley* for Van Wirt Construction Company, Inc.

HEFFERNAN, J. Plaintiff, a stockholder of defendant Van Wirt Construction Company, Inc., has brought this action against the corporation and the codefendant, National Bank of Glens Falls, to set aside a chattel mortgage given by the former to the latter

and to cancel the assignment of a contract to the bank between the construction company and the State of New York for the improvement of the highway between Hudson Falls and Glens Falls, and also to require the defendants to account for their dealings with each other.

Prior to the month of March, 1924, Lawton and Van Wirt were copartners engaged in building and repairing State highways. Plaintiff was associated with them in this work. On March fifth in that year, during Lawton's absence in Florida, and apparently without his knowledge, Van Wirt, his wife and the plaintiff caused to be incorporated, under the laws of this State, the Van Wirt Construction Company, Inc. The corporation was chartered with a capital stock of $20,000, divided into two hundred shares, one hundred and seventy-one of which were issued, and its business was identical with that theretofore conducted by the copartnership. Van Wirt subscribed for eighty shares, Mrs. Van Wirt for one and the plaintiff for five. They also comprised the board of directors, at the first meeting of which Van Wirt was elected president and treasurer and plaintiff became the vice-president and secretary. The plaintiff paid par for his stock as did also one Morrell for a like number of shares. At the time of the formation of this corporation the firm of Lawton & Van Wirt was indebted to the bank in the sum of $27,000, represented by its promissory notes callable on demand. As collateral security for this loan the bank held mortgages against real estate owned by the partners or their wives.

On April 2, 1924, Van Wirt, assuming to act on behalf of the partnership but actually without authority from Lawton, submitted to the corporation a proposition to transfer to it certain machinery owned by the firm and used in its business in return for 160 shares of the capital stock, to be divided equally between them. The directors, upon plaintiff's motion, unanimously accepted the offer. Upon his return, learning what had transpired in his absence, Lawton declined to acquiesce in the project. Later, however, he gave his approval, accepted the stock allotted to him and consented to the transfer of the machinery on condition that the corporation would assume and pay the firm's indebtedness to the bank. As part of the compact he obligated himself to become surety upon the corporation's undertakings.

Subsequently to its creation the construction company secured and performed various contracts to build and oil roads throughout the State. The partnership never functioned thereafter except for the purpose of liquidation. In July, 1925, the corporation had prospered to such an extent that its assets were sufficient to dis-

charge all its obligations, including those of the defunct firm. Lawton insisted on the dissolution of the company and the payment of its bills. Van Wirt opposed this policy. As a result of their differences, on July 14, 1925, they entered into an agreement in writing by the terms of which Lawton was to surrender to Van Wirt his holdings in the corporation, the company was to assume the partnership liabilities to the bank and give to that institution a chattel mortgage in the sum of $30,000, upon its tools, equipment and machinery, as security for those debts and all other corporate obligations. The provisions of this contract were fulfilled by Lawton.

On August 21, 1925, the stockholders unanimously approved this agreement. Thereafter and in the following November, by resolution duly adopted without a dissenting vote, they directed the president to execute and deliver the mortgage to the bank. This was consummated on December 17, 1925. The company also assigned to the bank all moneys due to it from the State in connection with the improvement of the highway between Glens Falls and Hudson Falls. Neither the chattel mortgage nor the assignment was given in response to a demand of the bank. It merely accepted the tenders as additional security. Subsequently the company paid $7,000 to apply on the notes of Lawton & Van Wirt together with interest thereon to July 1, 1926. It is conceded that the company is now hopelessly insolvent and the questions here relate to the validity of the mortgage and the assignment.

Plaintiff now contends that the corporation could not legally incumber its assets for the purposes indicated and that the action of the corporate officers in so doing involves adventures without the scope of the chartered powers and consequently is *ultra vires.* It is quite true that, as a general rule, a corporation may not guarantee the debts of a third person when its own business interests are not involved. When the corporation's acts, although exercised without power, do not injuriously affect the public but only the interests of the stockholders, they may be sanctioned by their assent. They are the equitable owners of the corporate property and if the officials transcend their power, or perform an unauthorized act, or incur an indebtedness which would not create a corporate liability, they may ratify the procedure and validate the originally unauthorized transaction. It is not necessary that there should be an express assent upon their part to work an equitable estoppel. When they neglect to promptly and actively condemn an unauthorized deed and to seek judicial redress after its commission, they will be deemed to have acquiesced in it. Whether the assumption of the debts of Lawton & Van Wirt by the corporation

is *ultra vires*, as contended by plaintiff's able counsel, it seems to me is of not much importance in this case. Creditors were not injured by the acts complained of because there were none except the bank. Only the stockholders' private interests were imperiled and they voluntarily and deliberately subjected themselves to this result. The plaintiff, with full knowledge, not only acquiesced in what was done but he solicited and obtained the consent of Morrell, another stockholder, thereto. He remained silent when he should have spoken, thereby permitting Lawton and Van Wirt to shape their conduct in reliance on his approval. Manifestly they were justified in drawing this inference. Reservations which he may have made, not communicated to the other participants, are not available to him now and it would be a violation of the first principles of equity to permit him to assert that the acts were not within the legitimate powers of the corporation. Then, too, when plaintiff consented to the assumption of these debts it seemed the prudent thing to do. Certainly it was not *malum in se* so to do. The corporation was threatened with dissolution and to prevent that and to avoid the litigation incidental thereto, the stockholders assumed the obligation which is the foundation of this suit. The fact that the bank's notes were callable at any time unquestionably was an important element in influencing the determination of the company's shareholders. For more than a year after this transaction, which the plaintiff now condemns as evil, no word of disapproval came from him, denunciation and repudiation being withheld until the death of Van Wirt when the company was buffeted by the waves of adversity. Plaintiff would now have it believed that he did not then fully comprehend the significance of his act. It is conceded that he can read and write our language and that he discussed the matter in detail with Van Wirt. His testimony now in explanation of his indorsement then is not credible. His conduct, before and after, tells another tale. Viewing this occurrence in the most favorable light to the plaintiff, the act of the stockholders in assuming the debts of the partnership was a violation of corporate authority. The violation, if any, was cured by plaintiff's approval. Neither fraud nor conspiracy has been shown.

Relative to the assignment to the bank of the contract which the company had with the State, it is perfectly clear that this cannot be the basis of a cause of action. The bank did not profit by that transaction. The moneys which it received from the State by virtue of this assignment, except the sum of $17,990.31 which was placed in a special account, were deposited to the company's credit and subject to its check, and were used exclusively in meeting its obligations. Some of the moneys in the special

account were necessarily expended in completing the highway and the balance is still held intact by the bank for distribution among the corporation's creditors.

The defendants are entitled to judgment dismissing the complaint on the merits.