Gus Valulis, Appellant, v. Phillip State Bank and Trust Company, Appellee.

Gen. No. 35,531.

Opinion filed April 5, 1932.

COONEY & VERHOEVEN, for appellant.

IRWIN GROSSMAN, for appellee; BEN A. STEWART, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

In an action in assumpsit, commenced in the superior court on July 10, 1930, there was a trial without a jury upon a stipulation of facts and certain documentary evidence introduced. On May 2, 1931, the court found the issues for defendant and entered a

judgment for costs against plaintiff and he appealed. Each party submitted certain propositions of law which were ruled upon by the court.

Plaintiff's original declaration consisted of a special count and the common counts. On defendant's motion, plaintiff also filed a bill of particulars. To the declaration defendant filed a plea of the general issue, and subsequently an additional plea to which plaintiff demurred. On March 16, 1931, plaintiff, by leave of court, filed two additional counts. On the eve of the trial the parties made a stipulation as to the pleadings, whereby plaintiff withdrew his demurrer to defendant's additional plea to the original declaration and defendant withdrew said plea, and it was agreed that defendant's plea of the general issue and affidavit of merits to the original declaration should stand to the additional counts, and that defendant be allowed upon the trial to make any and all defenses it might deem proper to all counts.

In the special count plaintiff alleged that on October 13, 1926, defendant was engaged in the banking business in Chicago and received from C. K. Pittas, Nick P. Maliopulos and Marion T. Anderson (hereinafter called the "purchasers") the sum of $8,000, on account for the purchase of certain real estate (describing it), and executed and delivered to them a certain written agreement, which recited that defendant was acting as trustee under the provisions of a certain "trust agreement," dated December 22, 1923, and known as "Trust No. 4," the terms and conditions of which trust agreement were known to defendant but not known to the purchasers or to plaintiff; that the written agreement was on June 2, 1930, assigned by the purchasers to plaintiff by their written assignment, together with all sums of money received by defendant from them (said written agreement is set out in full); that after said assignment defendant received other

sums of money from plaintiff on account of said written agreement; that said written agreement "was null and void" because "it was not a contract between said purchasers, or plaintiff, and any living or artificial person for the purchase of said real estate, but purported to be a contract between said purchasers, or plaintiff, and *a written document or chose in action,* towit, said trust agreement, dated December 22, 1923, and known as Trust No. 4"; that by reason thereof defendant received all the moneys aforesaid for the use of plaintiff. In his affidavit of claim he alleged that his demand is for moneys received by defendant for his use, and that there is now due to him from defendant, including interest, and after allowing all just credits, deductions and set-offs, the sum of $14,394.

In the first additional count plaintiff alleged that on October 13, 1926, and prior thereto, defendant "was incorporated under the statutes of the State of Illinois as a Banking Corporation and Trust Company, and engaged in a banking and trust business"; that on said date defendant entered into a written agreement with three named persons, called the "purchasers" (the same three as mentioned in said special count), to sell to them "certain real estate and lots (describing them) in what is known as the 'Crawford, Touhy Road Subdivision,' being a subdivision of lots and blocks which it was then engaged in selling through the 'Westminster Real Estate Developing Co.,' its selling agents"; that defendant did not then have, nor has it since acquired, such title to the land as would enable it to convey the same by good and sufficient warranty deed to purchasers; that the manner in which defendant acquired such title as it claims to have is "contrary to the statute"; and that the written agreement by it to convey the same to said purchasers "was beyond its corporate powers" and is "null and void." The second additional count is similar to the first.

In defendant's affidavit of merits it is alleged that at the time of the making of the written agreement of October 13, 1926, "all of the parties thereto were legal entities"; that the agreement "was entered into for a lawful purpose by persons legally competent to contract"; that thereafter and prior to the commencement of this suit, plaintiff or his assignors made payments to defendant as trustee which were duly credited by it in reduction of the purchase price of the land; that on December 13, 1929, plaintiff and/or his assignors defaulted in the payment of principal and interest, and continued in such default from and after said date and increased the amount of such defaults by failing to pay the principal in the sum of $201 on the 13th day of each and every month thereafter, and also by failing to pay other interest; that on June 15, 1930, defendant notified plaintiff in writing "that, unless said defaults were cured by plaintiff making payments on or before July 25, 1930, it would forfeit plaintiff's rights in said contract and in said premises"; that said defaults were not cured; that on August 6, 1930, defendant notified plaintiff "that said contract and all of plaintiff's rights therein *had been and were forfeited and determined"*; that at the time this suit was commenced said contract was null and void and had ceased to exist from and after August 6, 1930; and that defendant is not indebted to plaintiff in the sum of $14,394, or in any sum.

From the stipulation of facts and the documentary evidence introduced upon the trial the following in substance appears: On December 22, 1923, defendant was, and since has been, a corporation organized under the banking laws of this State, and was and is engaged in the general banking business in Chicago. It also was and still is authorized to accept and execute trusts, and was and still is functioning and doing business as a trust company under the laws of this State.

Title to the land in question was on said date conveyed by Mary K. Muno, a widow, under a "Warranty Deed in Trust," to defendant "as trustee under the provisions of a trust agreement, dated December 22, 1923, and known as Trust Number 4." By the deed full power was given to defendant to deal with the property for trust purposes, and in no case was any person, to whom the land or any part thereof should be conveyed, contracted to be sold, leased or mortgaged, obliged to see to the application of any purchase money, or to see that the terms of the trust were complied with, or be privileged or obliged to inquire into any of the terms of the trust agreement. The deed recited that it was the intention to vest in defendant the entire legal and equitable title in fee to all of the land conveyed, and that the interest of every beneficiary thereunder was to be "personal property," and to be "in the earnings, avails and proceeds arising from the disposition of the premises."

To said Trust Agreement No. 4 there were three parties, viz., Pauline C. Rothstein, Alfred Blauspahn, Rose G. Kepler and Irwin Grossman of Chicago, first parties, called the "Beneficiaries"; defendant bank, called the "Trustee" when referred to in its capacity as such, and called the "Trust Company" when referred to in its individual capacity, second party; and Edward A. Talman and Wilbur P. Thiele, copartners as Talman & Thiele, called the "Managers," third parties. The land conveyed by the deed was a tract containing approximately 20 acres, which later was subdivided and platted into blocks and lots. This constituted the trust estate. Defendant, in its individual capacity, loaned to itself in its capacity as trustee the sum of $42,000, taking as security a note for said amount, evidencing said indebtedness, maturing December 22, 1926, and bearing interest, payable semiannually. Said trust agreement provided that said

note was to be a first lien on all proceeds received from the sale of lots in the tract, after paying the commissions earned by the managers on sales made by them. The money loaned by defendant in its individual capacity was used as part of the purchase price for the tract acquired by it in its capacity as trustee. The business of selling the lots in the tract was vested exclusively in the managers. They agreed to use their best efforts to sell said lots, to employ all necessary salesmen at their own expense, to pay all costs involved in the selling, including those of printing contracts, advertising, automobile hire and salesmen's commissions. All contracts for the sale of lots were to be executed by defendant, as trustee. All payments, under said contracts made by purchasers, except a certain percentage of the first payment which said managers were authorized to retain as a part of their commissions, were to be made to defendant, as trustee, which could retain one (1%) per cent of the selling price of each lot sold as full compensation for its services as trustee.

On October 13, 1926, defendant as trustee, first party, and plaintiff's assignors, as second parties, entered into the written agreement, mentioned in plaintiff's declaration and introduced in evidence, wherein and whereby, in consideration of defendant's promise and agreement as trustee, to convey to plaintiff's assignors a good and sufficient title to the lots or land therein described, said purchasers agreed to pay to defendant, as trustee, as the purchase price therefor, the sum of $20,100 in the following manner: $5,025 on the signing of said agreement and $201 a month, commencing November 13, 1926, and continuing monthly thereafter until October 13, 1930, when any balance then remaining unpaid would become due and payable; and they further agreed to pay certain interest monthly on the principal sum remaining from time to

time unpaid, and also to pay all taxes and special assessments. And they, and plaintiff as their assignee, made payments under said agreement to defendant, as trustee, on account of said purchase price, up to December 13, 1929; but since said last mentioned date neither the principal remaining due, nor any part thereof, nor any interest, nor any taxes, were paid by plaintiff, or by any one for him.

On July 15, 1930, defendant, as trustee, by its duly authorized agent and attorney, caused to be served upon plaintiff (assignee of said purchasers) a written notice of its intention to declare a forfeiture, as it was provided in said written agreement could be done, on account of said defaults, unless said defaults were cured by plaintiff by not later than July 25, 1930. Such defaults were not cured by plaintiff, or by anyone for him, on July 25, 1930, or thereafter, and on August 6, 1930, defendant, as trustee, caused to be served upon plaintiff its formal written declaration of forfeiture, introduced in evidence, by means of which said written agreement, in accordance with its express terms, was forfeited, determined and canceled, and all right, title and interest of plaintiff in and to said lots or land was forfeited and determined. And defendant, as trustee, thereupon re-entered and took possession of the premises and every part thereof.

It is contended by plaintiff's counsel that the judgment appealed from is erroneous, because the written agreement of October 13, 1926, between plaintiff's assignors (the purchasers) and defendant, "as Trustee under the provisions of a Trust Agreement, dated December 22, 1923, and known as Trust No. 4," is void for want of mutuality, in that it was not a contract between said purchasers and any living or artificial person, but purported to be a contract between said purchasers "and a written document or chose in action." The contention is without merit. In *Weissbrodt v. H. W. Elmore & Co.*, 262 Ill. App. 1 (opinion

filed in May, 1931, certiorari denied by the Supreme Court in October, 1931), the same contention was made under similar facts, and it was decided that the similar contract there involved for the purchase of land was not void for want of mutuality.

The main contention of plaintiff's counsel is in substance that defendant, chartered as a bank to do a banking business in this State and also authorized to accept and execute trusts, is without power as a trustee to take title to land in fee, to subdivide and plat it into blocks and lots, to enter into contracts for the sale of the lots to third persons, to sell and dispose of them through agents or brokers, and to turn over the proceeds of the sales, less expenses, etc., to those persons beneficially entitled thereto; that such acts are ultra vires such bank, contrary to law and against public policy; and that a purchaser (or his assignee) of parcels of the land, under a written agreement to purchase the same on deferred payments, may at any time treat the contract as void, repudiate it and recover back such payments as he has made to such bank as trustee, with legal interest, in an action for money had and received.

When plaintiff filed his original declaration in the present suit, the *Weissbrodt* case, *supra,* had not been decided. While the suit was pending this division of this Appellate Court rendered its opinion on December 16, 1930, in the case of *Tietke v. Union Bank of Chicago,* 259 Ill. App. 341. During March, 1931, plaintiff's attorneys, evidently relying upon the holdings in that case, filed the two additional counts in the present suit. In the *Tietke* case, under its facts, it was held that the defendant bank was without power to enter into the particular contracts with the plaintiff for the conveyance of certain lots to him after full payment had been made of the purchase price in deferred instalments, that the contracts were void, and that the plaintiff was entitled to a judgment for the total

amount, with certain interest, of all moneys which had been paid to the bank under the contracts. Accordingly a judgment for a specified sum was entered in this court against the appellee bank, and in April, 1931, our Supreme Court denied a writ of certiorari. (259 Ill. App. XV.) The facts in the *Tietke* case, however, are different from those in the present suit. There it appeared that, although the appellee bank was incorporated to do a banking business under the statutes of Illinois and also was qualified to do business as a trust company, the title to the land involved was *not vested* in the bank as trustee, but in a different trust company (Chicago Title & Trust Co.), and that the bank, when it made the contracts with the plaintiff for the conveyance of the lots, had not received any authority from the last named trust company to execute said contracts. We said in the opinion (p. 344) after mentioning section 9 of our General Banking Act (Cahill's St. ch. 16a, ¶ 9):

"But appellee seeks to sustain its authority to execute the contracts in question on the ground that it is qualified to do business as a trust company. To be sure, under the trust companies statute (Cahill's St. ch. 32, ¶ 345) it may as a corporation execute trusts and be appointed trustee by deed. But there is nothing in the stipulated facts which confer upon defendant any such trust relation as contemplated by said Act. The only power conferred upon it in the trust agreement to which it was a party is that of collecting and distributing money. It held no trust relation to deal with the title of real estate. It was given no title to the lots involved or power as trustee, agent or otherwise, to sell them or contract for their sale, hence its contract was ultra vires as outside the scope of any power it possessed and unenforceable by either party to the contract."

In the present case the defendant bank was vested with both the legal and equitable title to the land, and

we are of the opinion that it was fully authorized under said "warranty deed in trust," and said "trust agreement" known as "Trust No. 4," to execute just such an agreement as it did execute with plaintiff's assignors in its capacity as trustee. In section 1 of the Banking Act (Cahill's St. 1931, ch. 16a, ¶ 1, p. 167) it is stated that the banks and banking associations formed thereunder "shall have the power *to loan money on personal and real estate security,* and to *accept and execute trusts,* and shall be subject to all of the provisions of this Act." In section 9 of said Act, Cahill's St. ch. 16a, ¶ 9, it is provided that "Associations organized under this Act shall be bodies corporate and politic, . . . may sue and be sued, . . . may own, possess, and may carry *as assets* the real estate necessary in which to do its banking business, and such other real estate to which it may obtain title in the collection of its debts, but shall not carry *in its assets* any real estate except its banking house for the period of more than five years after acquiring title to the same." It does not appear from the facts of the present case that the land in question ever was carried by defendant bank "in its assets," but was acquired and carried by it in the capacity of trustee for others. Furthermore, in section 1 of our "Trust Companies Act" (Cahill's St. 1931, ch. 32, ¶ 345, p. 792), it is provided: "That any corporation which has or shall be incorporated under the general incorporation laws of this State, . . . for the purpose of accepting and executing trusts, and *any corporation* now or hereafter authorized by law to accept or execute trusts, may be appointed assignee or *trustee by deed,* and executor, guardian or trustee by will, and such appointment shall be of like force as in case of appointment of a natural person." It appears from the facts of the present case that defendant corporation was authorized to act in two capacities, viz., (1) as a bank organized under said Banking Act, and (2) as a trust

company doing business under said Trust Companies Act. In 7 Corpus Juris, p. 881, sec. 970, it is said: "The distinction between a bank and a trust company is well defined. The powers of the trust company depend on the terms of its charter, of course, but they are not banking powers. The trust company, like the savings bank, pays interest on deposits, but its deposits are strictly loans, not subject to check. It cannot issue its own notes for circulation, nor does it buy or sell exchange in the ordinary course of its dealings. In directions that are not akin to banking, its powers are much broader and extend outside the monetary realm *into real estate transactions, trusteeships,* and the conduct of property interests of all kinds." In the recent case of *Walsh v. Stock Yards Trust and Savings Bank,* 345 Ill. 265, our Supreme Court said (pp. 267–8): "Originally banking power was very limited and consisted of receiving money, in exchange for which promissory notes were given, payable to the bearer on demand. . . . Modern bankers have extended their operations far beyond the original scope of banking powers. Banks frequently act as trustees by appointment of courts, or under wills or deeds, and the right of banks in this State to act as such trustees is recognized in *Wedesweiler v. Brundage,* 297 Ill. 228. Section 1 of the Banking Act specifically gives to banks the power to accept and execute trusts." (See, also, *People v. Brady,* 271 Ill. 100, 110.)

Under the stipulated facts of the present case (including the documents introduced), and in view of the statutes and authorities above referred to, we are of the opinion that there is no merit in plaintiff's counsel's main contention above mentioned and that the trial court was right in entering the judgment against plaintiff. Accordingly, the judgment is affirmed.

*Affirmed.*

KERNER and SCANLAN, JJ., concur.