H. W. Bird v. Lake Mabel Development Corp., *et al.*

150 So. 797.
Division B.
Opinion Filed October 28, 1933.
Rehearing Denied November 27, 1933.

*McCune, Hiaasen & Fleming,* for Appellant;

*Walsh, Beckam & Ellis* and *Wm. B. Farley,* for Appellees.

BUFORD, J.—This case is before us on appeal from order and decree sustaining demurrer to second amended bill of complaint and dismissing the suit, after demurrers had been sustained to original and amended bills of complaint.

The bill of complaint was in the nature of a creditor's bill interposed by one, who, being complainant in a foreclosure suit, had obtained a final decree as well as a deficiency decree after sale of the mortgaged property.

The alleged ground for the relief prayed was that when Lake. Mabel Development Corporation was organized it purchased, from the defendant, Marshall, pursuant to a contract between Marshall as one party, vendor, and George Whyel, Bruce F. Sterling and W. H. Beckham, promoters, a tract of land; that Beckham acted on behalf of himself and his partners W. E. Walsh and E. P. Ellis; that the corporation paid part cash and gave Marshall its notes and mortgage for the balance of the purchase price. That the mortgage and notes constitituted the cause of action in the foreclosure suit. Marshall held the mortgage and notes until after maturity and then instituted suit. Pending the suit, he transferred and assigned all his rights to Bird and Bird was substituted as complainant.

As an incident to the creation of the corporation and the execution and delivery of the mortgage and notes, it was agreed between the parties above named that the purchase

price of the land was to be $4,750.00 per acre. That the corporation at the time of executing and delivering its mortgage and notes would issue stock in an amount equal to $1,250.00 for each acre of the land purchased and deliver one-fourth of such stock to W. H. Marshall and divide the balance equally between Whyel, Sterling and Beckham, and that such stock was so issued in pursuance to such agreement without the corporation receiving anything of value from the same.

The bill of complaint sought an order and decree requiring the recipients of this stock to pay into the treasury of the corporation each the par value of the stock so issued and held by them.

If this suit had been instituted by one not a party to the entire transaction, several important questions would be presented which are not necessary to be determined by us under the facts presented in this case. The theory of the complainants is that the stock issued as above stated was bonus stock and that by the several parties each receiving the certificates of stock from the corporation they each severally became bound in law to pay the corporation the face value of the stock and that a creditor of the corporation may compel such holders of the corporate stock to pay the same to the corporation so that funds may be available with which to pay the creditor's claims. We are not required to determine whether or not a creditor not a party to the issuing and delivery of the stock could successfully maintain a suit of this sort.

In this case the appellant, complainant in the court below, took an assignment of the cause of action after maturity and after the institution of suit from Marshall, who was a stock holder in the corporation, who was a party to the agreement for the issuance of the stock here in question,

who was the recipient of a part of that stock, and who received a part of that stock as a part and parcel of the same transaction in which he received the notes and mortgage constituting the cause of action. The appellant stood in the court below and stands now in Marshall's shoes, entitled to all the relief which Marshall could have, but to no other.

In the case of Summers, *et al.,* v. A. N. R. R. Co., *et al.,* 85 Fla. 9, 96 Sou. 151, this Court, speaking through Mr. Justice WEST, said:

"But complainants are, and were at the time of the various transactions of which they now complain, *sui juris.* This arrangement was in accordance with the contract of May 10 and 11, 1905. Evidence introduced for the purpose of showing that the execution of these contracts was fraudulently accomplished or that deception was practiced as an inducement to their execution is not conclusive. It is denied by defendants. The burden of proof is on complainants. Wilson v. Lott, 5 Fla. 305; White v. Walker, 5 Fla. 479; 12 R. C. L., p. 424. The fact alone that complainants made a hard bargain would not avoid the contracts. Mizell Live Stock Co. v. McCaskill Co., 59 Fla. 322, 51 Sou. Rep. 547; Florida Ass'n. v. Stevens, 61 Fla. 598, 55 South. Rep. 981.

"Nor can it be said that it appears from the record that in the process of refinancing the enterprise deception and fraud were employed by defendants in the various steps and transactions incident to it to the detriment of complainants. The chancellor held the opposite view and we cannot say that the finding is not supported by the evidence. On the contrary, it appears from the evidence that the participation and acquiescence of complainants as stockholders and officers in the proceedings of the corporation defendants in all their transactions were such as to estop them

now from questioning their validity. In Perkins v. Trinity Realty Co., 69 N. J. Eq. 723, 61 Atl. Rep. 157, the Court said:

" 'To permit stockholders' of corporations to unanimously make a disposition of the corporate property where no one else's rights are in any way prejudiced, and afterwards to repudiate their action upon the ground that it was beyond the power of the fictional body to do the act, could serve no useful purpose, and would be merely available in aid of fraud. To hold that, under such circumstances, those who have unanimously done the act cannot repudiate it, is certainly consonant with good morals and fair dealings, and violates no principle which is necessary to the protection of the rights of those concerned in and with corporations. In cases where stockholders have all assented to corporate action, and no rights of the State or creditors intervene, the doctrine of estoppel is fully applicable, and the plea of *ultra vires* is unavailing.'

"The rule generally is that stockholders' who participate in and assent to acts of corporations will not afterwards be heard to complain but will be held estopped to question the validity of the proceedings. Cook on Corporations (6th ed.) Vol. 1, Sec. 39, Vol. 2, Secs. 730, 735; Martin v. Niagara Falls Paper Mfg. Co., 122 N. Y. 165, 25 N. E. Rep. 303; Babcock v. Farwell, 245 Ill. 14, 91 N. E. Rep. 683, 137 Am. St. Rep. 284; Jordan & Co. v. Collins' & Co., 107 Ala. 572, 18 South. Rep. 137."

We deem it unnecessary to cite additional authorities to support this principle.

If the venture had turned out favorably and the profits had accrued in accordance with the visions entertained by the promoters including Marshall, Marshall would have reaped the profits incident to the holding of the stock so

issued to him, as would those others who participated with him in this transaction. Therefore, he could not now, when the venture has proved a failure, be heard to say that the stock was issued in fraud of the law and that he will, therefore, hold his associates who participated with him in that stock issue to pay the face value of the stock into the corporation, that he may recover the same in satisfaction of his mortgage and notes which were made and executed as a part and parcel of the same transaction.

The relief which should be denied to Marshall must likewise be denied to one in privity with him by reason of being the assignee of the mortgage and notes after maturity.

For the reasons stated, the order and decree appealed from is affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.