Edward J. Barrett, Auditor of Public Accounts of the State of Illinois, Appellant, v. Henry C. Reuter et al., Appellees.

Gen. No. 39,044.

Opinion filed March 15, 1937.

CASTLE, WILLIAMS & McCARTHY and SHEEHAN & EGAN, all of Chicago, for appellant; EMMETT J. MC-CARTHY, ROBERT RAYMOND HANLEY and WILLIAM H. KAILES, all of Chicago, of counsel.

LITSINGER, HEALY, REID & BYE, of Chicago, for appellees; DANIEL M. HEALY, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

I. January 17, 1934, the plaintiff as auditor of public accounts filed a bill to foreclose a trust deed executed and delivered by defendants, Henry C. Reuter and Anna Reuter, his wife, and Louis G. Reuter and Helena Reuter, his wife, on May 1, 1929, to the West Englewood Trust and Savings Bank, to secure 130 first mortgage notes in the aggregate principal sum of $70,000. The bill contains the usual averments as to ownership of the plaintiff, default by defendants, etc., and the usual prayer for foreclosure and general relief.

The averment as to ownership is that the plaintiff obtained the securities through a deposit made by the West Englewood Trust and Savings Bank pursuant to the provisions of section 6 of the Trust Companies Act (see Ill. State Bar Stats. 1935, ch. 32, ¶ 350, p. 929; Jones Ill. Stats. Ann. 135.25). Defendants answered denying the equity of the bill and also filed an amended answer with a counterclaim to which they made defendant William L. O'Connell, receiver of the West Englewood Trust and Savings Bank, a party. The cause was put at issue and referred to a master who took the evidence and filed his report October 23, 1935.

The master found that some time after its incorporation the West Englewood Trust and Savings Bank deposited with the auditor of public accounts $200,000 in securities pursuant to the provisions of section 6 of the Trust Companies Act, and received from the auditor an amended certificate authorizing it to conduct the business of a trust company in Illinois. He also found execution by the defendants and delivery of the notes and trust deed to the bank on May 1, 1929; that about the same time the bank was requested by the auditor to increase its deposit of securities to $500,000 in order to continue in the business of a trust company; that on June 3, 1929, it made such additional deposit, including among the securities so deposited these notes and mortgage of the defendants; $10,000 of the principal amount of these notes was subsequently paid. The rest of the notes remained with the auditor until the West Englewood Trust and Savings Bank was closed by the auditor on June 9, 1931.

Prior to May 1, 1929, defendants Henry C. Reuter and Louis G. Reuter, who were copartners, opened a commercial checking account with the bank, and when it closed there was a balance to the credit of their account in the amount of $59,835.39. At the time the bank closed it was heavily indebted to general depositors and also to a large number of its trusts.

The master found the equities to be with the plaintiffs, recommended a decree of foreclosure, and that the counterclaim by which defendants prayed that the balance of their deposit be allowed as a set-off against the amount found to be due under the terms of the note and the trust deed should be dismissed. Objections filed by defendants were overruled. These stood as exceptions upon their hearing before the chancellor. The exceptions were based solely upon the law alleged to be applicable to the facts as found by the master. The chancellor sustained the exceptions and entered a

decree granting the relief prayed in the counterclaim and dismissed the bill of complaint for want of equity. From that decree the auditor has perfected this appeal.

II. The holding of the court in substance was that the auditor was not the legal owner of the mortgage indebtedness; that the delivery of the notes and mortgage by the bank to the auditor was unauthorized under section 6 of the Trust Companies Act, and the defendants were, therefore, entitled to set off their account at the bank. The question of whether the Trust Companies Act was constitutional was argued before the chancellor, but the decree makes no finding upon that issue. On the contrary it finds "that the Trust Companies Act is not applicable to banks."

Upon the assumption that a constitutional question was involved, the record was originally filed in the Supreme Court. That court, on motion of plaintiff, transferred the cause to this court.

The defendants here contend that the Trust Companies Act is not applicable to banking corporations. They say that section 1 of the Banking Act (Ill. State Bar Stats. 1935, ch. 16a, ¶ 1, p. 157; Jones Ill. Stats. Ann. 10.01) grants to banking corporations unlimited power to accept and execute trusts. They rely on the express language of section 1,—"and such banks or banking associations shall have the power to loan money on personal and real estate security, and to accept and execute trusts." Defendants point out that section 1 of the Banking Act is the only part of that act in which the subject of trusts is directly mentioned. Nowhere in the act, it is said, is the deposit of securities with the auditor required or authorized. Moreover, it is urged that such a deposit is in violation of the word and spirit of the act in that it creates a preference in favor of one class of depositors over another, and takes away from general depositors the security of the capital and surplus of the bank.

As illustrative, defendants assume that the Trust Companies Act was never enacted. It would then, they say, be obvious that banks would have full power to accept and execute trusts without the deposit with any official of any securities. In such case it is said, setting apart a distinct fund for the benefit of one class of "depositors" would deprive others of security which they would have a right to rely on. Defendants further suppose a case of the organization of a bank with capital of $200,000 which secures deposits of $500,000, then determines to do a trust business and deposits $200,000 with the auditor of public accounts, it would thereby wipe out its entire capital so far as its depositors are concerned.

Defendants also say that the courts of this State have never held that the Trust Companies Act is applicable to a banking corporation; that the questions, first, of whether a bank must qualify under this act before accepting and executing trusts, or, secondly, whether if it does so qualify it has the right or authority to deposit assets of the bank for the benefit of such trusts, have never been passed on by the courts of this State in any particular case. This is said to be true of *In re National Bank of Ottawa,* 273 Ill. App. 545; *Wedesweiler v. Brundage,* 297 Ill. 228; *Gits v. Foreman,* 360 Ill. 461; *Tietke v. Union Bank of Chicago,* 259 Ill. App. 341; *Valulis v. Phillip State Bank & Trust Co.,* 266 Ill. App. 78; *People ex rel. Nelson v. Citizens Trust & Savings Bank,* 272 Ill. App. 444.

Defendants admit that there is in these cases *dictum* to the effect that the law is applicable to banks; language from which such a conclusion might be derived; assumptions that such is the law, but nowhere in a case where it was necessary to a decision has it been expressly so held.

Defendants also contend a bank has no implied authority to make such a deposit, and they cite *Texas &*

*Pacific Ry. Co. v. Pottorff,* 291 U. S. 245, 78 L. Ed. 777;
*City of Marion v. Sneeden,* 291 U. S. 262; *People ex
rel. Nelson v. Wiersema State Bank,* 361 Ill. 75; *People
ex rel. Nelson v. Citizens State Bank,* 275 Ill. App. 159,
and *People v. Seward State Bank,* 268 Ill. App. 32, and
say that assuming the Trust Companies Act requires
the deposit by banks of these securities would be to
hold directly contrary to the principle announced in
these cases that a bank may not make a special deposit
of its assets in favor of any one particular class of
creditors.

Defendants further argue that so construed the
Trust Companies Act would amount to an amendment
of the Banking Act in a material respect and would
have no force unless voted upon by the people, as re-
quired by section 5 of article XI of the Constitution.
They appeal to the language of section 6 of the Trust
Companies Act to the effect that ''each company in all
cities and towns of 100,000 inhabitants or more, before
accepting any such appointment (as trustee, etc.) of
deposit, shall deposit with the Auditor of Public Ac-
counts the sum of $200,000 . . . 'said deposits to be for
the *benefit of the creditors of said company.''* They
say that this section does not mention banks, and that
for reasons already pointed out it should not be ap-
plied to banks, and that if it be held that the provision
applies to banks at all, it means that before the bank
is qualified to accept trusts it must deposit securities
with the auditor which are no part of the capital or
deposits of the bank. Such a construction, they say,
would remove all the objections made by the courts in
the decisions quoted by them and require that securi-
ties should be deposited which were no part of the
capital or deposits of the bank, as they say was held in
*People ex rel. Nelson v. Citizens State Bank,* 275 Ill.
App. 159, where it was decided that a bank which be-
came a depositary for State funds must give security

therefor where required to deposit such assets as the bank could procure outside of and apart from its own assets. This, it is said, was a well considered case based upon *Commercial Bank & Trust Co. v. Citizens Trust & Guaranty Co.,* 153 Ky. 566, 45 L. R. A. (N. S.) 950, which is also approved in *People v. Seward State Bank,* 268 Ill. App. 32. The principle is that when a legislative act is susceptible of dual construction, the one which secures equality and equity should be adopted in preference to another which makes possible the perpetration of fraud.

Moreover, it is pointed out that section 6 of the Trust Companies Act does not expressly state that the securities shall be deposited for the benefit of any particular creditors less than all, but on the contrary provides that ''said deposits to be for the benefit of the creditors of said company.''

Finally it is urged that if said section 6 of the Trust Companies Act is construed otherwise it would amount to an amendment of the Banking Act and is, therefore, void in that it was never submitted to a vote of the people, as required by section 5 of article XI of the Constitution of Illinois, which provides in substance that no act authorizing or creating associations with banking powers, or amendments thereto, shall go into force unless submitted to a vote of the people. The Banking Act itself, it is pointed out, was submitted to such vote. So, it is said, were the amendments thereto, and such amendments as were not submitted were declared by the courts to be of no effect. To this point defendants cite *People v. Gould,* 345 Ill. 288; *McQueen v. Randall,* 353 Ill. 231; *Golden v. Cervenka,* 278 Ill. 409, and *Sykes v. People,* 132 Ill. 32.

Such is a summary of the reasons given by defendants for their contention that the court properly sustained the exceptions as to the findings of the master, and allowed the set-off. We will now give consideration thereto.

III. The unquestioned finding of fact is that when the bank closed it was indebted under various trusts to the amount of $448,069.15, which the claimants alleged were secured by securities deposited with the auditor. The trial court nevertheless held, as defendants now insist, that the Trust Companies Act was not applicable to banking corporations, and this is the controlling question in the case. This construction of the act, as plaintiff points out, plainly ignores four different provisions of the statute. In the first place, section 1 of the Trust Companies Act specifically provides that deposits shall be made by "any corporation now or hereafter authorized by law to accept or execute trusts." Plainly, this language is broad enough to include a banking corporation; but if this were doubtful, section 6 of the same act contains language which would make the intention apparent. It reads:

*"No corporation authorized to accept and execute trusts shall,* either directly or indirectly through any officer, agent or employee of such corporation, accept or execute any trust concerning property located wholly or in part in this State without complying with the provisions of this Act and all amendments thereto."

As further indicating the same legislative intention is section 11 of the General Banking Act, which requires that in case of insolvency of the bank, positions of trust held by it, such as executorship, guardianship and receivership, shall be relinquished. It is also a necessary inference from proviso 6 of the Trust Companies Act which in substance provides that nothing therein contained shall prohibit "a corporation organized under the General Banking Act of this State from taking conveyance of and holding title to real estate as trustee under the mortgage deed of trust given to secure payment of a loan made by the bank or made through the bank as agent for the lender." If anything were needed to add to the weight of these plain provi-

sions of the statute, it is found in the fact that for more than 50 years such has been the continuous contemporaneous construction placed upon these statutes by the Department of Government of the State to which is intrusted the execution thereof. As was said by the Supreme Court in *People v. Fidelity & Casualty Co.,* 153 Ill. 25:

"In construing statutes, the rule that contemporaneous exposition is strongest in the law is to be regarded. (*Phoebe v. Jay,* Breese, 268; *Isaacs v. Steel,* 3 Scam. 97; *Russell v. Rumsey,* 35 Ill. 362.) Where the execution of statutes is confided to a particular department of the government, the court will regard, and in doubtful cases adopt, the construction acted on by such department. (*Mathews v. Shores,* 24 Ill. 28; *Isaacs v. Steel, supra.*) And if the construction is doubtful, long continued action upon a particular construction may reduce the uncertainty to a fixed rule. *Comstock v. Cover,* 35 Ill. 470."

Although by section 1 of the Banking Act the power given to banking corporations to execute trusts is, as the parties here now seem to agree, unlimited in its nature, the legislature of the State has seen fit to restrict that power by the provisions of the Trust Companies Act, and that intention is manifest by the exception from these limitations of a certain number of such trust powers, as provided by section 6 of the act. While we recognize the fact that the cases upon which plaintiff relies are all distinguishable, the applicability of the Trust Companies Act to banking corporations is not denied in any of them; and particularly in *People ex rel. Nelson v. Citizens Trust & Savings Bank,* 272 Ill. App. 444, this court assumed such applicability and its decision is directly based upon the assumption of such applicability. As plaintiff points out, the absence of a decision directly in point, considering the time which has elapsed since the enactment of these statutes, can be accounted for only on the theory that

the point has not heretofore been considered worth litigating.

IV. In support of their contention that a banking corporation does not have implied power to comply with section 6 of the Trust Companies Act, defendants have cited a number of cases such as *Texas & Pacific Ry. Co. v. Pottorff*, 291 U. S. 245, 78 L. Ed. 777; *People ex rel. Nelson v. Wiersema State Bank*, 361 Ill. 75; *Knass v. Madison and Kedzie State Bank*, 354 Ill. 554; *City of Marion v. Sneeden*, 291 U. S. 262, all of which hold in substance that it is beyond the powers of a banking corporation, either state or national, to pledge its assets in order to secure private depositors. The rule announced in these cases is unquestioned. But they are not in point here for the reason that in no one of them was the pledge made pursuant to a statutory authority or direction. Thus in the *Wiersema* case the court said: ''There is nothing in the language granting the power to do a general banking business indicating that the legislature meant to include any powers other than those usually understood as embraced within the term. We therefore cannot say that the public policy of this State, as declared by the constitution and legislative enactments, approves a general pledge of assets by a bank to secure deposits.''

Plaintiff points out that the real question is whether it is reasonably necessary for a bank to comply with section 6 of the Trust Companies Act in order to exercise the power given to it to accept and execute trusts. The answer, they say, is found in the same section of the Trust Companies Act which contains an express prohibition against the execution of trusts in this State by corporations which have not qualified under that section. This provision we have already quoted, and we agree with plaintiff's contention that in view of the limited trust functions a bank may perform without conforming with the Trust Companies Act it would seem that compliance with it is reason-

ably necessary if the bank is to attain the full benefit of the powers which the legislature intended to grant to it.

V. As to the contention of defendants that even assuming that the Trust Companies Act applies to banks, the deposit of securities must be made out of assets which are no part of the required capital, surplus and reserve with which the bank begins business, and that irrespective of what part of the assets of the bank may be deposited, such assets when deposited must be held for the benefit of all creditors of the corporation and not for the benefit alone of trust claimants or creditors of the trust company, the answer of the plaintiff seems to us convincing. It is, in the first place, that there is no evidence in this case that this security deposited by the West Englewood Trust and Savings Bank was not made out of its surplus. Defendants say it was not, but there is nothing in the record supporting their assertion. Section 6 of the Trust Companies Act provides that securities deposited shall consist "of bonds of the United States or bonds of the Home Owners' Loan Corporation or municipal bonds of this State, . . . or in mortgages on improved and productive real estate in this State, being first liens thereon, and the real estate being worth at least twice the amount loaned thereon."

There does not appear in the act any further specifications as to the character or origin of the securities that are to be deposited. However, the auditor with whom these securities were deposited is, by section 11 of the Banking Act, specifically charged with the duty to see to it that the capital stock of a banking corporation remains unimpaired. The presumption is that the auditor performed his duties in that regard.

As to the contention that the clause of the Trust Companies Act, "said deposits to be for the benefit of the creditors of said company," means that the securi-

ties are to be held for the benefit of all creditors of the bank or trust company, we think it is apparent that such a construction would require us to ignore the apparent purpose which the Trust Companies Act was intended to accomplish. It would also prevent a uniform application of the act to all corporations doing a trust business. Under such a construction of the act, the creditors of a trust company engaged only in doing a trust business would acquire better protection than creditors of a corporation doing a trust business and a banking business as well. The Supreme Court has recently held that this was not the intention of the legislature in the enactment of the law. *People ex rel. Barrett v. Cairo-Alexander County Bank,* 363 Ill. 589.

But this theory, even if accepted, would not entitle defendant to the set-off allowed in this case. It would be necessary to further assume that the proceeds of the deposited securities should be distributed pro rata among all the creditors of the bank without regard to various preferred classes.

VI. Nor can we agree with the contention of defendants that the Trust Companies Act, if so construed, is inapplicable to banking corporations for the reason that it was never submitted to a vote of the people as provided by section 5 of article V of the Constitution. On this record we are called upon to construe the act rather than to decide a constitutional question. We hold the language of these acts to be free from ambiguity. The language of statutes when unambiguous and plain leaves no room for statutory construction. The language here is plain and the intention manifest. *Sup v. Cervenka,* 331 Ill. 459. The Trust Companies Act and the General Banking Act of 1887 were enacted at the same session of the legislature (see Laws of 1887, page 89). The rule applicable to the construction of such statutes has been laid down by the Supreme Court in *Hoyne v. Danisch,* 264 Ill.

467, where the court said: "Statutes enacted at the same session of the legislature should receive a construction, if possible, which would give effect to each. Each is supposed to speak the minds of the same set of lawmakers, and the words used in each should be qualified and restricted, if necessary, so as to give validity and effect to both acts. The presumption is that different acts passed at the same session of the legislature are not intended to destroy each other, unless the acts in express terms so state."

However, even accepting defendants' mode of construction we cannot accept their argument upon the constitutional question. Section 5 of article XI of the Constitution of 1870 provides, "no act of the General Assembly authorizing or creating corporations or associations with banking powers . . . nor amendments thereto . . . shall go into effect or in any manner be in force" unless submitted to a vote of the people. It will be noticed that the prohibition is not directed against any act which affects banks but only against an act or amendment which authorizes or creates corporations with banking powers. This section of the constitution was construed in *People v. Gould,* 345 Ill. 288, where the validity of an act making it a crime to receive deposits knowing the bank to be insolvent was questioned as unconstitutional because it had not been submitted to a referendum. The court held the law to be valid, saying in part: "The section refers to the manner of organization of banking corporations, the privileges granted to them, the duties and obligations imposed upon them, the supervision, regulation and control of them by the Auditor, and not to the general rules of commercial law, the law of negotiable instruments, and the great mass of substantive law to which the Banking act makes no reference."

In the same manner and for the same reason an act with relation to the buying and selling of foreign ex-

change or transfer of money to foreign countries (Ill. State Bar Stats. 1935, ch. 17b, ¶¶ 1–7, pp. 188, 189; Jones Ill. Stats. Ann. 10.43–10.49) was challenged as being contrary to this provision of the constitution in *Italia America Shipping Corp. v. Nelson,* 323 Ill. 427, 430. The court said: ''The basis for this contention seems to be that the powers of banking corporations are increased or enlarged by reason of their exception from the provisions of the act. While the passage of this act may have a tendency to increase the amount of business done by banking corporations by reason of its restrictions upon other corporations, the act does not increase or enlarge the powers of banking corporations, for the reason that prior to the passage of the act it was within the scope of the ordinary functions of a bank to deal in foreign exchange and money. *Wedesweiler v. Brundage,* 297 Ill. 228.''

So with reference to the act of July 8, 1931, defined as ''an act defining the relationship between banks and their depositors with respect to the deposit and collection of checks and other instruments payable in money,'' approved July 8, 1931. (See Session Laws of 1931, p. 671) known as the Bank Collection Code. It was contended in *McQueen v. Randall,* 353 Ill. 231, that this statute constituted an amendment to the Banking Act and should, therefore, have been submitted to a vote of the people. But the court again said, following the reasoning in the *Gould* case, that the act did not increase, subtract from or diminish, or in any way affect a right, duty, power or privilege of any incorporated bank or banking association; that it was not, therefore, an amendment to the Banking Act and no reason existed for submitting the act to a vote of the people. In the later case of *People ex rel. Nelson v. Dennhardt,* 354 Ill. 450, where the same contention was again raised, the Supreme Court adhered to its decision, although in the later case of *People ex rel.*

*Barrett v. Union Bank & Trust Co.,* 362 Ill. 164, the act was held invalid, not upon constitutional ground but for the reason that it was held to be in conflict with the Federal statute which requires ratable distribution of the assets of insolvent national banks. U. S. C. A. Title 12, Banks and Banking, sec. 194.

As plaintiff points out, the real question is whether the provision of the Trust Companies Act affects banks with respect to their powers in such manner as to constitute an amendment to the Banking Act, thus bringing the act within the prohibition of section 5, article XI of the Constitution. If it does not, it would have been improper to have submitted it to a referendum. *People ex rel. Thomson v. Barnett,* 344 Ill. 62. Defendant relies upon *People·v. Gould,* 345 Ill. 288; *McQueen v. Randall,* 353 Ill. 231; *Golden v. Cervenka,* 278 Ill. 409; *Sykes v. People,* 132 Ill. 32. In the *Sykes* case it was held that a law changing the name of a bank which had been fixed by the act created such an amendment and must, therefore, be submitted to a vote. In the *Golden* case the question did not actually arise in the case but was referred to in the opinion as an additional reason why a provision in the General Corporation Act as to the liability of stockholders of a corporation was inapplicable to a banking corporation. *People v. Gould* and *McQueen v. Randall* we have already considered. However, the defendants expressly disclaim any intention to contend that the Trust Companies Act is unconstitutional. The question is only collaterally involved in this appeal. This court has already indicated its opinion that the statute is constitutional in *People ex rel. Nelson v. Citizens Trust & Savings Bank,* 272 Ill. App. 444. In that case we said: "Had we the power to pass upon the constitutionality of the act we would find no difficulty in holding against appellant's contention. Section 5 of Article XI of the Constitution requires to be submitted

to the people only those acts of the general assembly which (a) authorize or create corporations or associations with banking powers, and (b) acts of the assembly which amend statutes described in (a). The Trust Companies Act applies to banks only as they operate as trust companies, or, to put it in another way, when they function as trust companies, but it does not regulate them in respect to their general banking business. This important act was enacted in 1887 and its constitutionality has never been questioned. In *Meister v. Carbaugh,* 310 Ill. 486, 488, the court said:

" 'We have often said that ''when a statute has long been treated as constitutional and important rights have become established thereunder, the courts may thereafter refuse to consider its constitutionality.'' ' "

In the recent case of *People ex rel. Barrett v. First State Bank & Trust Co.,* 364 Ill. 294, in a case where the validity of section 4 of the Bank Depositors' Protection Act was attacked upon this constitutional ground, the Supreme Court said: ''This section of the act has nothing to do with the organization of corporations or associations with banking powers nor with any act of the General Assembly amending existing laws on that subject. It is not an act creating corporations or associations with banking powers but is penal in its nature. Various sections of this act have previously been before this court for consideration, and it has been uniformly held that they do not constitute an amendment to the Banking act and so do not come within the constitutional provision for determination by a vote of the people. *Hoffman v. Sears Community State Bank,* 356 Ill. 598; *McQueen v. Randall,* 353 id. 231; *People v. Gould,* 345 id. 288.''

We hold the act is not unconstitutional for the reason urged.

VII. Plaintiff, however, further contends that the question of whether defendant was entitled to set-off

does not depend upon the assumption that the Trust Companies Act applies to banks. The auditor contends that even assuming that the deposit of securities was ultra vires the bank, since the record discloses that Henry C. Reuter, one of the partners, was a director of the bank from June 14, 1930, until the bank closed June 9, 1931, attended the directors' meeting and knew his securities were deposited with the auditor of public accounts, was present when a letter from the auditor was read calling attention to the condition of the bank, and on the same date, February 9, 1931, addressed a letter to the auditor assuring him that steps were being taken to correct the depreciation of the bank's assets, he must have known that his securities were deposited with the auditor under section 6 of the Trust Companies Act, must have acquiesced therein, and as plaintiff contends, is now estopped from contending as against the auditor that the deposit was not lawful and authorized. There is authority supporting this contention. *Babcock v. Farwell,* 245 Ill. 14, 40; *Santos v. National Bank of Glens Falls,* 130 Misc. 348, 223 N. Y. Supp. 817; *Bird v. Lake Mabel Development Corp.,* 112 Fla. 494, 150 So. 797; Fletcher, Cyclopedia of Private Corp., Vol. 7, sec. 3453. However, in view of the conclusion at which we have arrived on other phases of the case, it is not necessary to discuss this contention at length. We hold that the court erred in sustaining the exceptions to the report of the master, and for that error the decree is reversed and the cause remanded with directions to the trial court to overrule the exceptions of defendants to the master's report and to enter a decree as by him recommended.

*Reversed and remanded with directions.*

O'Connor and McSurely, JJ., concur.