137 So.2d 881 (1962)
G. Kirk SMITH, Appellant,
v.
Joan P. BOLLINGER, Appellee.
No. 2682.
District Court of Appeal of Florida. Second District.
February 21, 1962.
*882 Thomas C. MacDonald, Jr., Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for appellant.
R.M. Cargell, Lindsey & Cargell, St. Petersburg Beach, for appellee.
PER CURIAM.
This is an interlocutory appeal by G. Kirk Smith who was defendant below in a suit filed by Joan P. Bollinger, his former wife from whom he had been granted a divorce. The complaint was in the nature of a bill of review by which the plaintiff sought partial invalidation of the divorce decree "insofar as it does not award the plaintiff the custody of said children, and insofar as it deprives the plaintiff of a lump sum settlement in and for her interest in the defendant's property, and insofar as it deprives her of her interest in the joint home of the plaintiff and defendant."
The chancellor denied the defendant's motion to strike portions of the amended complaint and his motion for summary judgment. The defendant thereupon brought this interlocutory appeal and raised several points which relate essentially to the one question as to whether the chancellor erred in denying the defendant's motion for summary judgment. A comprehensive review of the record convinces us that summary judgment should have been entered for the defendant G. Kirk Smith and the amended complaint of Joan Bollinger finally dismissed.
The pleadings and the affidavits, exhibits and depositions submitted in the summary judgment proceedings show that the parties were married June 20, 1953 and had two children. In 1955 and 1956 Joan had two illicit love affairs with one Glenn Underwood which Kirk forgave. Thereafter, in July of 1959 Joan had a third affair with one Don Bollinger. The marriage of the parties could no longer be reconciled, so they entered into a separation agreement.
The agreement cited that Joan, after ten days deliberation and discussion with her family, entered into the agreement voluntarily in full settlement of all her claims. Kirk was to pay the cost of the contemplated divorce and his suit would be based upon extreme mental cruelty. In order to avoid local publicity the suit was to be brought in another county. The custody of the children was to be in Kirk and Joan jointly with equal rights of visitation. It was further provided that in the event Joan remarried she would automatically relinquish her joint custody of the children, but retain reasonable rights of visitation.
The separation agreement further spelled out a rather complicated arrangement for living under the same roof, though not as man and wife. In this connection Kirk was to pay Joan for the time spent in caring for the children on an hourly rate limited to $75.00 weekly maximum. Kirk agreed to pay all expenses for maintenance of the children and meals for Joan. Joan was to retain as her own a 1959 Pontiac automobile while Kirk was to have absolute ownership of the home place and its contents.
Joan and Kirk lived in the same home for a few days until Joan resumed going out with Don Bollinger. Kirk told Joan to get out of the house and, if he had his way, the children would never know they had a mother. She went to a hospital for a few days. Upon advice of her mother Joan employed independent counsel in St. Petersburg. Kirk filed his complaint for divorce and the original separation agreement was abandoned. Joan filed an answer, and waiver of notice of all further proceedings with certain exceptions, and subscribed to a new stipulation or agreement between the parties, all of which was made a part of the record.
The stipulation provided for a property settlement which was substantially incorporated in the final decree. Kirk was given full custody of the children with visitation rights in Joan, and Kirk was to provide the support for each child when visiting her. Joan was to receive the automobile *883 and Kirk was to place $3,000.00 in trust for her to be paid at the rate of $200.00 per month with interest until exhausted. Joan was to execute a deed conveying her rights in the home property held by the entirety together with the furnishings. The decree would operate as a deed if she failed to execute the conveyance.
The divorce decree was entered October 1st, 1959 and thereafter on October 12, 1959 Joan and Don Bollinger applied for a marriage license. They were married but Joan left him approximately two months later. On April 18, 1960 Joan filed her complaint in the nature of a bill of review. Kirk had remarried in September 1960. He moved to dismiss Joan's complaint on the ground of res judicata. In her depositions Joan admitted adultery. The chancellor denied Kirk's motions to dismiss and for summary judgment and granted Joan's motion to amend her complaint.
The substance of the amended complaint is that threats by Kirk that "if I had my way the children would never know they had a mother," when Joan was upset and highly emotional, was sufficient to constitute duress, entitling her to have a redetermination of property rights. The appellee's brief states in addition that the appellant threatened to expose the appellee to a charge of adultery and drag her name through the mud. There is no evidence substantiating charges to this effect, and it therefore will not be considered on appeal.
The appellant's first point states:
"Where the court has jurisdiction of the parties (both of whom were represented by counsel) and jurisdiction over the subject matter, can a final decree of divorce be collaterally attacked by the divorced wife after her remarriage, in the absence of fraud, misrepresentation, or other inequitable conduct amounting to fraud by the plaintiff-husband who procured that final decree of divorce?"
Joan was represented by counsel of her choice. The evidence and the master's findings clearly establish that she was at fault. She disappeared on July 28, 1959 at 10:00 A.M. and was found by a deputy sheriff in the company of Don Bollinger at 10:00 P.M. She signed the stipulation after consulting her parents, accepted the benefits, and in October 1959, after her marriage to Don Bollinger, sold the automobile.
In Cooper v. Cooper, Fla. 1954, 69 So.2d 881, a woman brought suit against her former husband to set aside a deed allegedly signed under duress. An order entering judgment for the plaintiff was reversed, when the Supreme Court found there was insufficient evidence to support duress. In that case at 883, 884, the opinion stated:
"In the first place the woman clearly accepted the benefit of the commitment relative to property division that she signed. There is no hint that she was coerced to sign that instrument which was the basis for the deeds. We may assume that she accepted the benefits of that arrangement and retains them.
"In the second place, although we have said we will not attempt to pass upon disputed testimony we must be aware of the burden the appellee assumed when she attacked the validity of the deeds. At the time she was the adverse party in a divorce suit against the grantee so no fiduciary relationship existed, Shlensky v. Shlensky, 369 Ill. 179, 15 N.E.2d 694, and she, therefore, had to prove the coercion the same as if the man to whom she was still technically bound were a stranger. * * *
"Taking the evidence as a whole the appellee's own version is wanting and the corroboration is lacking as well. As was said in the last cited case `Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes *884 him to do an act or make a contract not of his own volition.' * * *
"* * * We announced there [Finston v. Finston, 160 Fla. 935, 37 So.2d 423] the rule `that a final decree * * * settles all property rights of the parties and bars any action thereafter brought by either party to determine the question of property rights.' In that case the court had before it the question of property rights and held that the doctrine of res judicata controlled. Here the property rights were not introduced in the litigation but they could and should have been so the same rule applies here as will be seen by an examination of our opinion in Town of Boca Raton v. Moore, 122 Fla. 350, 165 So. 279, cited as authority for the rule stated in Finston v. Finston, supra.
"The present suit does not resemble a bill of review because nothing now relied upon was discovered by the appellee after the divorce case was ended. All the circumstances surrounding the execution and delivery of the deeds were as well known to appellee when they were happening and the divorce suit pended as they were when she filed the bill in the immediate case." (Emphasis added.)
In Fuller v. Fuller, Fla. 1953, 68 So.2d 177, 178, a woman attacked a final decree a year after the decree was entered, alleging the same charges of fraud in concealment of the husband's assets that she had alleged in her answer to the divorce suit. The court held:
"In the divorce proceedings the husband and wife were dealing `at arm's length'. In that very proceeding she charged him with fraud. She was represented by an attorney of her own choosing. No confidential relationship existed between them and in such a proceeding she had no right to rely upon her husband to disclose anything to her with reference to his property or business transactions. Columbus Hotel Corporation v. Hotel Management Co., 116 Fla. 464, 156 So. 893.
"Litigation should end sometime. After the wife became suspicious of the husband, she charged him with fraud. She was afforded every opportunity to prove her allegations. She refused to do so and instead accepted an additional payment of $4,000 in further settlement of her property rights. The motion to dismiss the bill in the nature of a bill of review should have been granted."
In Miller v. Miller, 1942, 149 Fla. 722, 7 So.2d 9, the Supreme Court of Florida speaking through Justice Chapman, held:
"Original bills in the nature of bills of review brought for the purpose of impeaching a final decree are addressed largely to the sound discretion of the court and can be permitted or allowed without leave of the court. It is usually considered as a new suit and its objective is to impeach a final decree obtained by fraud or some other equitable reason. * * *
"Courts of equity have the power and jurisdiction to grant relief and set aside and annul judgments and decrees obtained by fraud, deceit, artifice or trickery. * * * Agreements made in good faith, free from fraud, deceit or trickery relating to alimony between husband and wife, or the adjustment of their property rights, though made in contemplation of divorce, can or may be sustained or upheld by the courts.
* * * * * *
"* * * It is asserted that the defendant husband reached with the appellant an alimony settlement contrary to her best interests, at a time when she was ill, mentally abnormal, not in possession of all her faculties * * *.
* * * * * *

*885 "It is our conclusion that the appellant made a settlement with her husband of her alimony claims for an inadequate amount when considering the value of his property holdings at the time that the divorce decree was entered, but we fail to find evidence in the record sufficient to establish fraud, coercion, deceit or over-reaching on the part of the husband as required by the decisions of this Court. She was mentally competent to engage counsel and file suit and later appeared in court and gave testimony to support the charges * * *. The decree was entered and she accepted the money as a full settlement. We are without authority under these circumstances to interfere." (Emphasis ours)
In Masilotti v. Masilotti et al., 1947, 158 Fla. 663, 29 So.2d 872, the Florida Supreme Court stated: "[w]here wife intentionally refrained from contesting issues in divorce suit of which she had due notice and an opportunity to be heard, wife could not question final decree by a bill in the nature of a bill of review * * *."
In Hobbs v. Hobbs, Fla.App., 136 So.2d 363, Case No. 2541, filed on January 17, 1962, this court reviewed a divorce suit wherein the wife challenged the amount of alimony awarded. This court stated that:
"In reviewing the decree within the compass of the points on appeal we are confronted with an unchallenged divorce in which the appellant wife, although adjudged at fault, nevertheless was awarded permanent alimony of $200.00 per month. A wife from whom the husband obtains a divorce because of her misconduct ordinarily is denied alimony eo nomine, but allowances have been granted in exceptional cases * * *. Moreover, an offending wife may be decreed an interest in the husband's estate by showing her entitlement to special equity therein."
If it had been alleged and proven in the suit for divorce that Joan was guilty of adultery, she would have been denied alimony under Florida Statutes, §§ 65.08 and 65.09, F.S.A. Though she admitted adultery in her deposition, the divorce was obtained only on the ground of extreme cruelty and the complaint did not even allege adultery.
The amended complaint in the present supplemental litigation alleges that defendant G. Kirk Smith was guilty of "extreme cruelties and indignities to the plaintiff to the degree that she was not in possession of her normal faculties" and was in fact undergoing hospital and psychiatric treatment for her nervous state of mind; that she did not understand the events happening around her due to heavy sedations administered to her when she signed the separation agreement and stipulation and that, believing in Attorney Jack Carey's assurances, she allowed the divorce decree to be entered without contest. The depositions and affidavits, however, show that such was not the case.
In the deposition of the plaintiff, filed September 15, 1960, Joan Bollinger stated that the only time she saw a doctor was when she was in the hospital July 30, 31 and August 1, 1959. She was given no prescription to be taken after she left the hospital, and she was not under sedation during the month of September 1959 when she signed the stipulation.
Joan stated that she selected the firm of Carey and Harrison to represent her in the divorce action after talking it over with her mother; that Kirk Smith had nothing to do with the selection of her separate counsel nor did he prevent her from taking any defense that she desired. She admitted that she was aware that the stipulation provided that Kirk was to own the house and everything in it. She discussed this stipulation with her mother and father both before and after she signed it, and she discussed it with her attorney. She read the stipulation in the presence of two witnesses and said that she understood it. When questioned about the alleged threat made *886 by the defendant that "If I have my way, the children would never know they had a mother," she stated that Kirk made no further explanation, took the child up and went to another part of the house, and that this was the only threat made on that occasion.
The amended complaint charged that "by means of the aforesaid oppressive conduct, fraud, deceit and over-reaching, and by his threats to accuse the plaintiff of adultery in a divorce act," * * *. Kirk intended to permanently deprive Joan of the custody of the children and, with the "threat" that the children would never know they had a mother, compelled Joan to sign the separation agreement dated August 6, 1959. It is apparent this conclusion is unsupported by the record. Joan voluntarily accepted the benefits of the last agreement but sold the automobile after her remarriage. After leaving her second spouse, she came back to ask for more. She thought little of her children when she left home to meet her paramour whom she married soon after her divorce.
We consider next Joan's complaint that the property division was made at a time when she had no knowledge as to the extent of her husband's wealth or that their home was owned by the entirety. She admitted in her deposition that she owned no automobile, realty, stocks or bonds prior to her marriage. However, she stated that Kirk gave her shares of property in "Fred M. Fisher Company." When questioned on deposition she stated that he never discussed any of his property holdings with her in detail, that he neither misrepresented the facts nor refused to tell her what he had, but she had never asked him specifically.
Joan alleged finally that the children were being cared for by a housekeeper and that Kirk refuses to let her visit with them except on Sunday mornings. The record shows that G. Kirk Smith was remarried on February 6, 1960 to Myrna Mae Quidley. His affidavit shows that the children are healthy and happy and are cared for and loved by his new wife. The children can live a "normal, stable and secure life." He stated that Joan Bollinger has not taken full advantages of the visitation privileges and has gone for weeks at a time without asking about them or arranging to see them.
On her deposition, Joan Bollinger stated that she knew that the separation agreement gave her joint custody of the children, that she continued to date Don Bollinger and she understood that Kirk was to have custody of the children under the stipulation that she signed. It should be noted here that the stipulation did not change the ultimate result of the separation agreement, because the separation agreement also awarded Kirk custody if Joan should remarry. She did in fact remarry only a few days after the divorce decree was entered. She still had the rights to visit the children and to have them on week ends. She admitted that she discussed specific hours for visitation and reached definite understandings as to what days she could have them. She stated that "usually it was on Sundays because if I worked on Saturdays it was half a day."
The welfare of the children is the prime consideration in cases such as this. It is notable in the present case that Joan was not particularly concerned with the children when she left them, when she signed the agreement and when she hastily entered into a new marriage. At the pertinent times in question she was not under sedation, and she was at all times represented by counsel of her choice. She lived with her new husband only two months. At no time did she attack the divorce decree until after her separation from Don Bollinger.
It is our conclusion that the "paper issues" created by the pleadings should have been recognized as such and a summary judgment entered for the defendant.
The decree appealed accordingly must be reversed for that purpose. See Hoyt v. *887 Galbreath, Fla.App. 1962, 135 So.2d 875; Warring v. Winn-Dixie Stores, Inc., Fla. App. 1958, 105 So.2d 915, 918.
Reversed.
SHANNON, C.J., and SMITH and WHITE, JJ., concur.