495 So.2d 1177 (1986)
Eugene UVANILE, Appellant,
v.
Donald DENOFF, Joseph Uvanile, Stuart Enterprises, Inc., Tideway Construction Company, Inc., and William Brant, As Trustee, Appellees.
Nos. 84-1445, 84-1955.
District Court of Appeal of Florida, Fourth District.
July 23, 1986.
Rehearing and Rehearing Denied November 4, 1986.
William R.H. Broome, Albury, Park & Heuer, and Larry Klein of Klein & Beranek, West Palm Beach, for appellant.
L. Louis Mrachek of Gunster, Yoakley, Criser & Stewart, P.A., West Palm Beach, for appellee Donald Denoff.
Rehearing and Rehearing En Banc Denied November 4, 1986.
SALMON, MICHAEL H., Associate Judge.
During 1958, Uvanile and Denoff entered into a business arrangement using corporations as their form of doing business. The business was the acquisition and development *1178 of real estate. The stock in the corporate entities was owned seventy-five percent by Uvanile, twenty-five percent by Denoff. Broadly speaking, Uvanile was in charge of acquiring land and obtaining financing for the projects, and Denoff was in charge of construction.[1]
During 1978, Denoff decided that the individuals should go their separate ways, and negotiations took place with a view towards dividing the corporate assets between the shareholders. These negotiations reached the stage of "bringing in lawyers," but did not result in an agreement. During early 1979 Denoff developed a heart condition which resulted in surgery and a desire upon the part of himself, his wife and his doctor to sever his business relation with Uvanile immediately.
While Denoff was in the hospital, Ms. Denoff negotiated with Uvanile and a written agreement dated April 27, 1979 evolved. The agreement provided that in exchange for money and property Denoff would transfer his stock in the corporation to Uvanile. The properties and money Denoff was to receive were to have a value equal to his twenty-five percent interest in the assets of the corporation.[2] Ms. Denoff claims that Uvanile represented to her that the agreement provided a fair seventy-five percent/twenty-five percent split of the corporate assets. Denoff claims that because he was in intensive care following heart surgery he did nothing much more than read and sign the agreement, relying upon the representation of fairness made by Uvanile to his wife.
This litigation arose when Denoff concluded later that the agreement was not fair, that Uvanile had not and never intended to perform parts of it, and that while Denoff was still a stockholder Uvanile had breached his fiduciary duties to the corporation. The issues raised by these claims[3] were submitted to a jury which returned a verdict of $263,041.31[4] compensatory damages and $237,859.79 punitive damages.
Apart from the award of costs,[5] two principal questions are presented for review: did the trial judge err in failing to direct a verdict for Uvanile, and are punitive damages appropriate in this case?
The complaint contained general allegations and counts of breach of fiduciary duty, fraud and breach of contract. We will discuss these categories in the order they were submitted to the jury.
The claim of breach of fiduciary duty is bottomed upon two activities of Uvanile.
Uvanile, because he owned the majority of the corporate stock and was the decision maker, is charged with misusing corporate assets by paying commissions to and absorbing expenses of Rentex, an entity solely owned by Uvanile. The corporate business required obtaining tenants, collecting of rent, and some maintenance and performing of other minor services. The claim is that rather than have the corporation do these things, Uvanile turned them over, at the expense of the corporation, to Rentex. Assuming that Uvanile breached his fiduciary duty by the use of Rentex, Denoff consented, although reluctantly, and cannot seek relief from it. Bird v. Lake Mabel Development Corporation, *1179 112 Fla. 494, 150 So. 797 (1933). This claim should not have been submitted to the jury.
The second claim of breach of fiduciary duty is that Uvanile acquired, in his own name, property in which the corporation had an interest and which should have been submitted to the corporation for acquisition. What has come to be known as the doctrine of "corporate opportunity" is enunciated in Farber v. Servan Land Company, Inc., 662 F.2d 371, 377 (5th Cir.1981):
If there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest, or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself. (Citations omitted.)
Uvanile seeks to limit this doctrine to those cases where the acquisition of the opportunity is necessary for the corporation for the officer to acquire it. For this proposition, he cites News-Journal Corporation v. Gore, 147 Fla. 217, 2 So.2d 741 (1941). Farber acknowledged the doctrine of corporate opportunity reached in Gore, and expressly stated that the opportunity need not be of the utmost importance to the welfare of the corporation to be protected from preemption by the corporation's directors and officers. This claim was properly submitted to the jury.
The jury next was asked to determine whether Uvanile fraudulently induced Denoff to execute the agreement of April 27, 1979. They answered yes, and as the verdict form was drawn, they were then excused from answering any questions about breach of contract. We will treat the fraud matters as treated in the briefs. The claim of fraud is threefold.
Claim 1: One of the corporate assets consisted of a warehouse which was built on a portion of "Lot 1"; the corporation intended to and had plans to build an office building on the unused portion of Lot 1; no separate value to that unused portion was considered in determining Denoff's share.
Claim 2: When valuing property, the value was arrived at by multiplying the rental by a factor that was too low.
Claim 3: The agreement provided that Denoff would receive twenty-five percent of the balance existing in the corporate bank account as of the date of the agreement. The claim is that monies were withdrawn to pay bills that were nonexistent or not due thereby depriving Denoff and benefitting Uvanile.[6]
Claim I: A warehouse had been built on Lot 1, but only on a portion of it. The balance of Lot 1 was sufficient to permit the construction of an office building upon it, and, indeed, the corporation planned to erect that building. All these facts were known to Uvanile and Denoff. The value of the unused portion of Lot 1 is between $40,000 and $49,000. This value was not included in the aggregate value of assets of the corporation, and Denoff received nothing for it. The question is whether at the close of his case he had made a prima facie case of fraud.
The elements of fraud are (1) a misrepresentation of a material fact, (2) (in this case) knowledge of the representer of the misrepresentation, (3) an intention that the representation induce another to act upon it, and (4) resulting injury to the party acting in justifiable reliance on the misrepresentation.
The claimed misrepresentation was that Uvanile misrepresented (to Ms. Denoff) that the written agreement contained a fair split of the corporate assets, and that that representation was wrong because Denoff *1180 received nothing for the unused portion of Lot 1.
The only element we need address is whether Denoff's reliance upon Uvanile's representation was justifiable. We think it was not. The doctrine announced in Besett v. Basett, 389 So.2d 995 (Fla. 1980) does not permit recovery to the recipient of a fraudulent misrepresentation to blindly rely upon it in every case. Considering the history of the parties' relationship to each other, Denoff's distrust of Uvanile, the negotiations that preceeded the ultimate agreement, Denoff's complete knowledge of the corporate affairs, and the disputes the parties had over value of property dictated that Denoff was not justified in relying upon the misrepresentation. The fact that Denoff was ill does not relieve him of his responsibility.
Claim II: There are many ways of valuing rental property. One is to multiply the annual rental by a factor which theoretically accounts for expenses and other variables necessary to be considered. What that multiple should be is the opinion of the person employing it. Based upon our review of the record, the use of Uvanile's multiplier rather than Denoff's multiplier was a difference of opinion, and not a misrepresentation of a material fact.
A verdict should have been directed for Uvanile with respect to Claims I and II.
Not so as to Claim III. The agreement provided that Denoff should receive twenty-five percent of the balance in the corporate bank account at the effective date of the agreement. Denoff claimed that in anticipation of the agreement being made Uvanile depleted the account by paying either nonexistent bills or bills not yet due which resulted in depleting of the account to the benefit of Uvanile. A great deal of evidence was presented regarding this point. The trial judge concluded that there was some "finagling" with the account, enough, at least, to preclude entry of a directed verdict as to this claim. We agree with him.
In addition to submitting the claims of compensatory damages to the jury, the trial judge instructed the jury with respect to punitive damages, which damages the jury awarded. The form of verdict submitted to the jury did not require the jury to assess compensatory damages for each segment of Denoff's claim, one amount was requested for Denoff's damages for breach of fiduciary duty and fraud. Because we have determined that some of the claims should not have been submitted to the jury, the judgment must be reversed. We also cannot determine whether the trial judge would have submitted the question of punitive damages to the jury had he directed judgment for the defendant on those claims, nor can we speculate as to what the jury might have decided, had the issue of punitive damages been submitted under those circumstances; therefore we deem it necessary to reverse that portion of the judgment awarding punitive damages.
Upon remand the trial judge should: (a) vacate the judgment, (b) determine whether the verdict for compensatory damages can be divided so as to provide for those damages to which Denoff is entitled, (c) conduct a new trial if the compensatory damages cannot be determined, (d) determine whether a new trial shall be conducted for the purpose of submitting the question of punitive damages to a jury, (e) conduct such other proceedings he deems appropriate, and (f) redetermine the award of costs in light of the result.
REVERSED AND REMANDED WITH DIRECTIONS.
HURLEY, DANIEL T.K., Associate Judge, concurs.
ANSTEAD, J., dissents in part with opinion.
ANSTEAD, Judge, dissenting in part.
I would reverse the awards for fraud and for punitive damages in their entirety. As to the counts for breach of fiduciary duty I would affirm. I would also allow appellee a new trial on his claim that appellant had improperly paid funds out of the corporate *1181 account. The settlement agreement between the parties provided for the division of the funds in the corporate account according to standard accounting practices without specifying what amount was to be divided. The appellee had a right under that provision to challenge any payments made out of the corporate account and to receive his portion of the account subject only to proper and legitimate withdrawals. There is clear proof that improper payments were made out of this account and appellee is entitled to be compensated for those improper payments.
In view of the execution of the settlement agreement, however, I see no evidentiary basis for a claim of fraud. It is undisputed that appellee knew everything that he now asserts as misconduct, at the time he executed the settlement agreement. I do not believe a person can execute an agreement fully cognizable of the provisions thereof and their consequences and subsequently claim fraud on the grounds that it had been represented to him that the agreement was "fair."
NOTES
[1] The precise corporate setup and the other details of management and operation of the business arrangement are not detailed in this opinion except those which are necessary to dispose of the questions that have been presented. The several corporations will be referred to as one, because the distinctions between them are not important to this decision.
[2] The precise method by which the assets were to be divided, the values of certain assets, the matters that were to be determined afterwards are not detailed in this opinion, except when necessary to dispose of the question presented.
[3] Other matters were submitted to a master for determination and are not in issue in this appeal.
[4] The verdict form sets out a lump sum award for compensatory damages for breach of fidiciary duty and fraud.
[5] This proceeding is a consolidated appeal from a final judgment and a cost judgment.
[6] Although not entirely clear, the matter of the bank account seems to be alleged as breach of contract and not a fraud.