555 So.2d 901 (1990)
Larry K. HENSON and Cheryl D. Henson, Appellants,
v.
JAMES M. BARKER CO., INC. and Seaboard Surety Co., Appellees.
No. 87-1437.
District Court of Appeal of Florida, First District.
January 12, 1990.
*902 William G. Cooper of Coker, Myers & Schickel, P.A., Jacksonville, for appellants.
Thomas B. Whitefield of Ulmer, Murchison, Ashby & Taylor, P.A., Jacksonville, for appellee James M. Barker Co., Inc.
Dale K. Bohner of VanWert, Heebner, Baggett, Bohner and Prechtl, Daytona Beach, for appellee Seaboard Surety Co.
ZEHMER, Judge.
We review an order dismissing the Hensons' amended complaint with prejudice. The amended complaint alleges that appellee contractor James M. Barker Company, Inc., fraudulently induced the appellant owners, the Hensons, to release Barker from further liability on its construction contract with the Hensons. The complaint seeks alternative remedies of rescission and damages resulting from Barker's alleged fraud and breach of the construction contract. The critical issue is whether the allegations are sufficient to show that Barker had a duty to disclose certain facts to the Hensons in connection with the negotiation and execution of the "Take Over Agreement" whereby Barker's construction contract with the Hensons was taken *903 over by another contractor and Barker was released of all claims arising out of that contract upon payment of certain stipulated sums by the Hensons. We hold the allegations, viewed most favorably to the plaintiffs, are sufficient to require an answer and presentation of evidence on the issues raised by the complaint.

I.
The essential facts are found in the amended complaint and documents annexed thereto. Barker, a licensed general contractor, and the Hensons, as owners, executed an AIA standard form construction contract entitled "Cost Of The Work Plus A Fee" covering the construction of an eight-unit condominium. The contract contained a guaranteed maximum cost to the owners in the amount of $937,862, plus an agreed fee to the contractor. Appellee, Seaboard Surety Company, issued a payment and performance bond covering the specified work. The Hensons made a construction loan from American Federal Savings and Loan Association of Duval County to finance the construction of the project.
During the course of construction, it is alleged, disputes arose between the Hensons and Barker over the timely and orderly progress of the work and Barker's entitlement to payment of certain draws based on Barker's revision of the schedule of values attached to the construction contract. Barker began requesting that the Hensons agree to increase the maximum construction cost figure and Barker's fee. These requests were accompanied by various written and verbal threats and representations by Barker to shut the job down for alleged nonpayment of the draws and other breaches of contract by the Hensons. Barker is also alleged to have contacted American Federal and suggested that it foreclose the Hensons' construction loan and permit subsequent development of the property by Barker. The complaint alleges that the Hensons did not know, although Barker did know but did not disclose to the Hensons, the following critical facts:
11. Matters unknown to Henson at relevant times, but known to Barker included, but are not limited to the following:
a. That certain portions of the work suffered severe latent defects which ultimately cost Henson in excess of $250,000 to correct; and
b. That Barker encouraged Henson's lender to foreclose he and his wife out, and negotiate a better deal for Barker with the lender i.e. [sic] for increased construction costs and fees under a new contract so that Barker could alleviate itself from the guaranteed costs under the attached contract.
The complaint then alleges that Barker's threats, representations and actions caused American Federal to threaten the Hensons with foreclosure unless they provided further equity for the project, which in turn caused Henson to infuse an additional $200,000 into the project. Barker persisted in making wrongful demands for payment coupled with threats of filing a lien on the property. As a result the Hensons, with the advice of counsel, consented to executing the annexed "Take Over Agreement" with another contractor, D. Coleman, Inc., to be substituted for Barker "under conditions recognized by Henson to include an increase in the cost of construction by approximately $200,000 and a new construction contract with D. Coleman."
The Take Over Agreement is annexed to the complaint and recites, in part, as the premises for the agreement that Barker is indebted to the named subcontractors and materialmen in certain described amounts; that "a dispute has arisen between [Barker] and HENSON concerning the Construction Contract, and the parties desire to amicably terminate their relationship"; and that "HENSON desires to employ D. COLEMAN, INC. (`COLEMAN') to complete construction of the project and HENSON with COLEMAN'S assistance has informed himself of the status of the Project." The agreement then sets forth substantive provisions whereby the parties agree that: Barker's rights in the original construction contract and all subcontracts will be assigned to Coleman; the Hensons release Barker and Seaboard "of and from any and all claims, demands and liabilities *904 arising out of the Construction Contract, or under any of the Subcontracts, or under the Bond, whether the same have accrued prior to the date hereof or arise subsequent hereto"; the Hensons will pay a certain amount which Barker agrees to accept in satisfaction of all sums due Barker for prior construction; and that "HENSON has inspected the work performed by each Subcontractor and has reviewed the provisions of each Subcontract," and Barker "makes no representation or warranty with respect to the work performed by [Barker] or by Subcontractors under the Subcontracts or that the Subcontractors named will perform any additional work required by the Subcontracts, or if performed, that such work will be satisfactory or will be performed for the amounts shown" on an attached schedule.
The amended complaint then alleges that had the Hensons or their counsel "known of the concealed activities by Barker as set forth in paragraph eleven, above, at the time of the execution" of the Take Over Agreement, "Henson would not have agreed to excuse Barker and the surety, Seaboard from performance" under the construction contract. It further alleges that the condominium project was ultimately completed by the second contractor "at an additional cost for the work described in [the original construction contract] in a sum exceeding $500,000 due to Barker's latent and covered defective work, Barker's delay and the costs incurred by Henson arising out of Barker's imposition of the `take-over agreement.'" The amended complaint claims relief in four counts: (1) Rescission and estoppel as to certain parts of the Take Over Agreement, primarily the release contained therein; (2) Barker's breach of the construction contract by:
a. wrongfully suggesting to Henson's lender that Barker develop the project following foreclosure for an increased construction contract and fee;
b. by anticipatorily repudiating the contract as a result of continual threats to stop the work and intentional delay to wrongfully leverage the plaintiffs to pay Barker more than the original contract sum;
c. concealing serious latent defective work; and
d. by failing to progress the work and staff the job with the necessary skilled persons to accomplish same;
(3) Seaboard's breach of the payment and performance bond to the extent of Barker's breach of contract; and (4) Barker's intentional fraud, as previously alleged, which caused plaintiffs to suffer damages, claiming both compensatory and punitive damages.
The parties and the trial court have treated each of the four counts as being dependent upon Barker's having a duty to disclose the matters alleged, primarily to avoid the effect to the release contained in the Take Over Agreement. The trial court dismissed the amended complaint with prejudice, reciting as follows:
The Court recognizes its duty to take each of the allegations of ultimate fact as contained in the Amended Complaint to be true. Such being the case, the real issue before the Court is whether or not the allegations of ultimate fact and reasonable inferences therefrom as set forth in the Amended Complaint demonstrate the type of relationship or circumstances existing between plaintiffs and defendant James M. Barker Company, Inc. at the time of the execution of the "Take Over Agreement" attached as an Exhibit to the Complaint were such so as to require a disclosure on the part of defendant James M. Barker Company, Inc. of certain facts involving Barker's communications with the owners' construction lender, American Federal Savings and Loan as alleged in paragraph ____ [sic] of the Amended Complaint. If the circumstances do not support a duty to disclose, then plaintiffs' attempt to obtain relief from the release provisions of the Take Over Agreement are unavailable to them. The Court concludes that the allegations of the Amended Complaint dealing with communications by James M. Barker Company, Inc. with plaintiffs' lender, under the circumstances set forth in the Amended Complaint, do not, as a matter of law, give rise to an *905 affirmative duty on James M. Barker Company to disclose such communications.
For reasons not otherwise explained, the trial court placed its ruling squarely on the lack of a duty to disclose Barker's communications with the construction lender, and made no reference to the allegations of concealed, latent defects in the construction.

II.
The sole issue presented on this appeal is whether the trial court erred in ruling as a matter of law that the allegations of the complaint were insufficient to state a cause of action for equitable relief against Barker arising out of Barker's failure to disclose the construction defects and its dealings with American Federal under the circumstances alleged.[1]
The Hensons primarily argue that although Florida common law has historically recognized the distinction between misrepresentation by failure to disclose, which is not actionable, and affirmative misrepresentation by making false statements, which is actionable, this distinction no longer exists after the supreme court's decision in Johnson v. Davis, 480 So.2d 625 (Fla. 1985). In Johnson the court upheld a finding of fraud based on the seller's nondisclosure of latent defects in a house. Appellants argue that this duty to disclose applies not only to sellers of real property but also to building contractors, citing U.S. Home Corp. v. Metropolitan Property and Liability Ins. Co., 516 So.2d 3 (Fla. 2d DCA 1987). They say that Barker breached this duty in concealing the latent defects and making covert efforts to wrongfully cause the construction loan lender to foreclose the loan with them in order that Barker might obtain a better contract price to complete the project than it had under the contract with the Hensons. The Hensons further argue that Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893, 902 (1934), and its progeny, which stand for the proposition that a person charged with fraud has no duty to disclose material facts to the charging party in the course of obtaining a release from the charge of fraud, are inapplicable to the facts of this case, suggesting also that it is doubtful this rule has survived the decision in Johnson v. Davis.
Barker and Seaboard argue in response[2] that the law favors the resolution of disputes by settlement and release, and to impose a duty of full disclosure on the parties to the dispute and settlement, as the Hensons would have the court do to Barker, would subvert this long-standing policy and be contrary to a long line of Florida appellate decisions finding no duty to disclose in settlement negotiations. E.g., Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893, 902 (1934); Fuller v. Fuller, 68 So.2d 177 (Fla. 1953); Pieter Bakker Management, Inc. v. First Federal Savings and Loan Association, 541 So.2d 1334 (Fla. 3d DCA), rev. denied, 549 So.2d 1014 (Fla. 1989); Uvanile v. Denoff, 495 So.2d 1177 (Fla. 4th DCA 1986), rev. dismissed, 504 So.2d 766 (Fla. 1987); Smith v. Bollinger, 137 So.2d 881 (Fla. 2d DCA 1952). Thus, they conclude, there was no duty on Barker to make the alleged disclosures, for in fact the agreements annexed to the complaint placed the burden on the Hensons to satisfy themselves as to the acceptability of Barker's work.

III.
To decide the issue thus presented, we begin our analysis by focusing on the *906 original contractual relationship between the Hensons, on the one hand, and Barker and Seaboard, on the other.[3] While Barker clearly was acting as an independent contractor dealing at arms length in negotiating with the Hensons and agreeing to construct the building in accordance with the plans and specifications described in the construction contract, once that contract was executed and Barker undertook its performance, the nature of that arm's-length relationship necessarily changed by reason of paragraph 3.1 of the contract, which provides:
The Contractor accepts the relationship of trust and confidence established between him and the Owner by this Agreement. He covenants with the Owner to furnish his best skill and judgment and to cooperate with the Architect in furthering the interests of the Owner. He agrees to furnish efficient business administration and superintendence and to use his best efforts to furnish at all times an adequate supply of workmen and materials, and to perform the Work in the best way and in the most expeditious and economical manner consistent with the interests of the Owner.
Although this provision did not create a true fiduciary relationship in the classic sense, nevertheless it imposed upon Barker certain duties that would not otherwise be imposed under the concept of caveat emptor generally applicable to an independent contractor dealing completely at arm's length. This provision undoubtedly required Barker to deal openly and fairly with the Hensons. In furnishing "his best skill and judgment" the contractor was certainly obligated to make full disclosure to the owner of all problems encountered that may affect the progress of the work and its value to the owners, including all corrections the contractor deemed necessary and the cost thereof, whether to be borne by the contractor or by the owner. This section imposed on Barker, at the very least, a duty to construct the building free of material defects, and a duty to disclose, and thus not conceal, any latent defects in the construction that would materially impair the value of the structure.
The duty of disclosure arising out of this contractual provision is consistent with the implied duty of disclosure imposed on sellers of real estate by the supreme court's decision in Johnson v. Davis, 480 So.2d 625. In that case, the supreme court discussed the common law distinction between misfeasance and nonfeasance, and concluded:
In theory, the difference between misfeasance and nonfeasance, action and inaction is quite simple and obvious; however, in practice it is not always easy to draw the line and determine whether conduct is active or passive. That is, where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative representations is tenuous. Both proceed from the same motives and are attended with the same consequences; both are violative of the principles of fair dealing and good faith; both are calculated to produce the same result; and, in fact, both essentially have the same effect.
* * * * * *
The law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it.
* * * * * *
Accordingly, we hold that where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer. This duty is equally applicable to all forms of real property, new or used.
480 So.2d at 628, 629.
The allegations in the amended complaint regarding the latent defects concealed and left undisclosed by Barker will support an *907 inference that Barker intentionally failed or refused to inform the owners of these construction problems and the additional costs required to make necessary corrections; and that Barker did so to induce the Hensons to agree to pay Barker for the work as if it had been performed satisfactorily, and to give Barker a release of any further liability under the construction contract. Thus, under both the quoted provisions of the construction contract and the common law espoused in Johnson v. Davis, we conclude that Barker had a duty to disclose the latent construction defects to the Hensons, unless such disclosure was later excused by reason of the settlement and release arising out of the existing dispute between them.
The allegations of Barker's failure to disclose its alleged efforts and communications to influence American Federal to foreclose the Hensons' construction loan presents a somewhat different legal issue. The duty of disclosure found in Johnson v. Davis does not apply to Barker's dealings with the Hensons' construction lender. One might well argue that Barker's attempts to cause American Federal to foreclose the construction loan for the purpose of dispossessing the Hensons from the project and allowing Barker to complete the project under a new contract for a higher amount would violate Barker's contractual obligation under paragraph 3.1 "to furnish his best skill and judgment ... in furthering the interests of the Owner" and the other provisions of fair dealing in that section. As these provisions require Barker to deal fairly and openly with the owners, the relationship created thereby would appear to preclude Barker from wrongfully influencing the owners' construction lender to foreclose and cause the owners to lose this project by foreclosure, and more importantly, from concealing that fact from the owners.[4] This section of the contract, however, does not appear to be directly concerned with the contractor's dealings with the owner's construction loan lender; there is no mention of the construction lender anywhere in the construction contract. The "Take Over Agreement" does not mention any disputes with American Federal, although American Federal signed a consent to the agreement and the release of Barker. We agree with the trial court that the allegations in the amended complaint fail to make evident any factual or legal basis for holding Barker under a duty to disclose its communications with American Federal prior to the Hensons' effecting the settlement. Whether or not the release in the Take Over Agreement was intended to cover Barker's actions with American Federal has not been argued to us, and we make no expression on that issue.
We disagree with the trial court that as a matter of law the Hensons could not make out a legally sufficient case against Barker under the allegations that Barker concealed and failed to disclose latent defects in the construction. The premise underlying the rule that settlement of an existing dispute precludes any duty of disclosure is that the relations of the parties and the nature of the dispute is such that the parties generally are not justified in relying on representations made by their antagonists in arriving at a settlement and release of the disputed issues. Thus, in Pieter Bakker Management, Inc. v. First Federal Savings and Loan Association, 541 So.2d 1334, the court characterized the application of this rule in Uvanile v. Denoff, 495 So.2d 1177, in the following manner:
[In Uvanile] the court considered the parties' antagonistic relationship, the negotiations, disputes and distrust that preceded the agreement, and the parties' relatively equal knowledge about the proposed transaction, and concluded that the plaintiff was not justified in relying on the defendant's representations.
541 So.2d at 1335. Furthermore, in the Florida cases cited by appellees for this *908 rule,[5] the appellate court was reviewing either a final judgment after trial or a summary judgment after the facts had been fully developed in the record; none of the cases disposed of the issues on the pleadings alone, but allowed the plaintiff to present evidence before adjudicating the issue. In Columbus Hotel Corp. v. Hotel Management Co., the court specifically held that the complaint sufficiently alleged the elements of fraud to warrant a trial of the issues and affirmed the denial of a motion to dismiss.
Barker further argues that a contract cannot be affirmed in part and disaffirmed in part, and that rescission of only a portion of the "Take Over Agreement" cannot be granted in this case, because the construction contract has been completed by a contractor other than Barker and the parties cannot be returned to the status quo or position they occupied before the agreement was made. However, it would be premature to decide that issue on these pleadings. A release may be set aside by the court where the evidence is sufficient to establish it has been obtained by fraud. Ekberg v. Bakeeff, 213 So.2d 277 (Fla. 3d DCA 1968). The general principles are well digested at 15A Am.Jur.2d, Compromise and Settlement § 29 (1976):
Although compromises and settlements are generally favored by the law, a compromise induced by fraud may be invalidated just as readily as any other contract induced by fraud... . A concealment of the truth, as well as an express statement of a falsehood, may be considered a representation of fact and may constitute fraud, so as to be the basis for invalidating a compromise. Although an unintentional nondisclosure, involving no intent to deceive, cannot constitute fraud, a compromise may be invalidated for fraud if one party deliberately conceals facts with the intent to induce the other party's action. However, there is no fraud where a party to a compromise conceals facts which he does not have a duty to disclose. Whether or not a party to a compromise is under a duty to disclose certain facts depends upon the circumstances of the particular situation. Where one party has superior means of ascertaining the facts and fails to disclose the true state of affairs to the other party, the lack of disclosure may be treated as fraud and may constitute a basis for invalidating a compromise. And the duty of disclosure is much more comprehensive where there is a fiduciary relationship between the parties to the compromise than where there is not, but the mere fact that a fiduciary relationship exists does not mean that all of the elements of fraud can be presumed.
Moreover, a release of a cause of action can be set aside or rescinded on the ground of a unilateral mistake of fact where the evidence supports the requisite elements of that claim. Maryland Casualty Co. v. Krasnek, 174 So.2d 541 (Fla. 1965); Lechuga v. Flanigan's Enterprises, Inc., 533 So.2d 856 (Fla. 3d DCA 1988); Pennsylvania National Mutual Casualty Ins. Co. v. Anderson, 445 So.2d 612 (Fla. 3d DCA), rev. denied, 453 So.2d 43 (Fla. 1984); cf. Smiles v. Young, 271 So.2d 798 (Fla. 3d DCA), cert. denied, 279 So.2d 305 (Fla. 1973).
The equitable remedy of rescission is not necessarily limited to situations where the parties can be restored to the status quo; that general rule is subject to exception where the inability of one party to restore is caused by the fraud perpetrated by the other party. Mulle v. Scheiler, 484 So.2d 47 (Fla. 5th DCA), rev. denied, 492 So.2d 1334 (Fla. 1986). The court in that case summarized the pertinent principles as follows:
Although the equitable remedy of rescission is generally not available unless the condition of the parties as it existed prior to the execution of the contract can be restored, Steak House, Inc. v. Barnett, 65 So.2d 736 (Fla. 1953), there are recognized exceptions to the general rule, such as in the case here, where the inability of the buyer to restore is caused by the very fraud perpetrated by the *909 sellers. See Williston on Contracts, (3d ed. 1937), Vol. 12, §§ 1460A, 1463. A defrauded person is excused from restoration to the extent he is rendered incapable thereof by reason of the wrongful conduct of the wrongdoer. 17A, C.J.S. Contracts § 439. See also Janeczek v. Embry, 330 So.2d 837 (Fla. 3d DCA 1976); Dobbs, Handbook on the Law of Remedies, § 9.4 (1973).
484 So.2d at 48. In the event restoration to the status quo is impossible, rescission may be granted if the court can balance the equities and fashion an appropriate remedy that would do equity to both parties and afford complete relief. Braman Dodge, Inc. v. Smith, 515 So.2d 1053 (Fla. 3d DCA 1987).
We conclude that the Hensons are entitled to present evidence in support of the allegations of their amended complaint. They allege that Barker intentionally did not disclose latent defects in the work to induce the Hensons to pay Barker and release him from further obligation to the Hensons. The relationship between Barker and the Hensons arising out of the contractual provisions required Barker to deal fairly and make disclosure to the Hensons in respect to defects in the construction. The language in the "Take Over Agreement" does not identify any particular dispute involving defective work or latent defects, so there is an issue of fact as to whether the settlement negotiations contemplated such defects and the release was given in contemplation of latent defects. Latent defects are generally considered to be hidden or concealed defects which are not discoverable by reasonable and customary inspection, and of which the owner has no knowledge. Black's Law Dictionary, verba "Latent defect" at p. 794 (5th ed. 1979). The recitations that "Henson with Coleman's assistance has informed himself of the status of the project" does not as a matter of law mean Henson should have discovered all latent defects, for nothing in the agreement indicates on its face that anything other than a customary inspection of status was contemplated. Nor does the recited agreement that "Henson has inspected the work performed by each subcontractor" mean as a matter of law that Henson was searching for latent or concealed defects. The disclaimer of warranty contained in the "Take Over Agreement" likewise does not operate as a matter of law to excuse the alleged concealment of defects material to the agreement. See U.S. Home Corp. v. Metropolitan Property and Liability Ins. Co., 516 So.2d 3. The extent of the antagonistic relationship, the subject matter and scope of the negotiations, disputes and distrust that preceded the agreement, and the existence or not of the parties' equal knowledge about these defects, may or may not support a finding that the Hensons were not justified in relying on Barker to make a full and fair disclosure. These are factual determinations that must be made upon consideration of the evidence rather than the bare allegations of the complaint.
The allegations in the amended complaint are sufficient to state a prima facie claim for equitable relief. Whether and upon what terms equitable relief should be granted must be determined after all parties have been afforded an opportunity to present evidence in support or defense of the allegations in the complaint. The judgment of dismissal is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
SHIVERS, C.J., and THOMPSON, J., concur.
NOTES
[1] Appellants' brief states the following two points on appeal:

I. A general contractor has a duty of fair dealing to his property owner and a duty to make honest disclosure of all material facts affecting the parties' contractual relationship, and
II. Because the course of dealing between the parties did not put the property owner on notice of the contractor's fraudulent character or intent, the contractor was not relieved of his duty of fair dealing and honest disclosure at the time of execution of the "Take Over Agreement."
These points being stated somewhat abstractly, are different facets of the single issue.
[2] Seaboard's brief simply adopts Barker's brief.
[3] Seaboard, as surety, was apparently obligated to insure the performance of the contract should Barker default, and we so assume for purposes of this opinion based on the allegations of the amended complaint.
[4] Of course, such wrongful interference by Barker with the business relationship between the Hensons and American Federal might amount to an independent tort, but that has not been argued to us, and we express no view on such claim.
[5] Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893, 902 (1934); Fuller v. Fuller, 68 So.2d 177 (Fla. 1953); Smith v. Bollinger, 137 So.2d 881 (Fla. 2d DCA 1952), in addition to Pieter Bakker and Uvanile.