714 So.2d 1120 (1998)
LAKES OF THE MEADOW VILLAGE HOMES CONDOMINIUM NOS. ONE, TWO, THREE, FOUR, FIVE, SIX, SEVEN, EIGHT, and NINE MAINTENANCE ASSOCIATIONS, INC., including all members thereof, Appellants,
v.
ARVIDA/JMB PARTNERS, L.P., a Delaware limited partnership, Appellee.
No. 97-3225.
District Court of Appeal of Florida, Third District.
July 15, 1998.
*1121 Papy & Weissernborn and Sheridan K. Weissenborn, Coral Gables, for appellants.
Rumberger, Kirk & Caldwell and Scott M. Sarason and Lori A. Brown, Miami, for appellee.
Before JORGENSON, COPE and GREEN, JJ.
COPE, Judge.
Nine condominium maintenance associations appeal an adverse summary judgment in their lawsuit for construction defects. As summary judgment should not have been entered on the basis of the developer's defense of release, we reverse.
In 1989 and 1990, the appellee developer Arvida/JMB Partners, L.P., turned over control of the nine condominium associations to the unit owners. See § 718.301, Fla. Stat. (1989). Eight of the nine associations executed releases in favor of the developer. The execution of the releases had been preceded by repair of "punch list" items for each of the condominium buildings. The general releases excluded "claims arising from matters which come into existence solely after the date hereof."[1]
*1122 In 1992, the condominium buildings were severely damaged by Hurricane Andrew. According to the plaintiff associations, this led to the discovery of latent design and construction defects, including roof truss systems which lacked adequate bracing; missing or improperly placed reenforcement in the concrete block walls; and missing or incomplete fire separation walls between units. The associations sued the developer for the construction defects. By amended complaint, the associations sought rescission of the releases.
Instead of answering, the developer moved for summary judgment on the theory that the lawsuit was barred by the releases (except as to association four, which had given no release).[2] The associations opposed the motion on multiple grounds. The trial court entered summary judgment on the entire case and the plaintiff associations have appealed.
The developer concedes that summary judgment should not have been entered with respect to condominium number four, because that association gave no release. That association was inadvertently included in the final judgment. The judgment as to association number four is therefore reversed.
With regard to the remaining associations, we likewise reverse. We note at the outset that here the developer moved for summary judgment before answer. The movant's burden is an especially heavy one where, as here, the pleadings are not closed. See Dealers Ins. Co. v. Haidco Inv. Enters., Inc., 638 So.2d 127, 129 (Fla. 3d DCA 1994). Here, the defendant developer seeks exoneration on the basis of the affirmative defense of release, but the developer has not yet filed an answer and affirmative defenses, and the plaintiff condominium associations have not yet had an opportunity to file a reply. The developer as moving party is not entitled to summary judgment unless the developer can show that no issue of material fact can be presented. See Rodriguez v. Tri-Square Constr., Inc., 635 So.2d 125, 126 (Fla. 3d DCA 1994); Olin's, Inc. v. Avis Rental Car Sys. of Fla., Inc., 105 So.2d 497, 498 (Fla. 3d DCA 1958).
The associations' claim in this case is for latent construction defects. "Latent defects are generally considered to be hidden or concealed defects which are not discoverable by reasonable and customary inspection, and of which the owner has no knowledge." Henson v. James M. Barker Co., 555 So.2d 901, 909 (Fla. 1st DCA 1990) (citation omitted). The associations have pled that "[t]he construction defects were latent and could not have been, nor were they, discovered by the Plaintiffs and individual unit owners upon reasonable inspection prior to March 1, 1993." For purposes of the motion for summary judgment, the developer concedes that that is so.
We conclude that the language used in the release is ambiguous. It excludes "claims arising from matters which come into existence solely after the date hereof." The *1123 releases were given in connection with the turnover of control of the condominium associations to the unit owners, and after completion of a "punch list" of repair items for each of the condominiums. Given that the developer was turning over control of the associations and, so far as the present record shows, terminating its operations with respect to those condominiums, it is difficult to see what "matters" could "come into existence solely after the date hereof except for warranty claims and hitherto unknown latent defects.
The developer has made no showing that this release language was the product of any negotiation regarding unknown latent defects. The gist of the condominium associations' position is that there was no such negotiation. Their affidavits say that the developer told the boards of directors that the releases were a routine and necessary part of the turnover of control of the associations from the developer to the unit owners, and that there was no consideration given for the releases. As the terms of the release are not clear, summary judgment should not have been entered. See Floyd v. Homes Beautiful Constr. Co., 710 So.2d 177 (Fla. 1st DCA 1998).
The associations also pled that the releases should be set aside on the ground of unilateral mistake of fact. On this claim, too, the developer has not carried its burden of showing entitlement to summary judgment.
"[A] release of a cause of action can be set aside or rescinded on the ground of a unilateral mistake of fact." Henson, 555 So.2d at 908 (citing, inter alia, Maryland Cas. Co. v. Krasnek, 174 So.2d 541 (Fla. 1965); Lechuga v. Flanigan's Enters., Inc., 533 So.2d 856 (Fla. 3d DCA 1988); Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Anderson, 445 So.2d 612 (Fla. 3d DCA 1984)).
"Florida case law supports the proposition that relief will be granted for unilateral mistake where the mistake goes to the substance of the agreement, is not the result of a lack of due care, and where the other party has not relied upon the mistake to his detriment." Langbein v. Comerford, 215 So.2d 630, 631 (Fla. 4th DCA 1968) (footnote omitted).
Read in the required light, the record shows that these were serious latent construction defects which the associations did not know about.[3] The mistake is of such magnitude that it goes to the substance of the agreement. There is no showing of any detrimental reliance on the releases by the developer. Assuming those to be the facts, the associations would be entitled to have the releases set aside.
The associations in addition opposed summary judgment on the theory that there was no consideration for the releases. The associations' affidavits say that the new boards of directors were told by the developer's representatives that they must sign the releases as a routine and necessary part of the change of control of the association, and that the developer gave no consideration for the releases. The associations correctly point out that transfer of association control is regulated by statute and that there is no requirement for releases to be given. See § 718.301, Fla. Stat. (1989).
The releases recite "consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration, the sufficiency of which ... is hereby acknowledged.... "The recital of consideration raises a presumption that there was consideration, but the presumption is rebuttable. See Foster v. Martin, 436 So.2d 143, 144 (Fla. 2d DCA 1983); Howdeshell v. First Nat'l Bank of Clearwater, 369 So.2d 432, 433 (Fla. 2d DCA 1979). The developer's representative says that the consideration for the releases was the completion of the punch list items,[4] while the associations say that there was no such consideration. Here, too, there remain disputed issues of material fact that preclude summary judgment.
The associations' affidavits also asserted that the signatures on the releases were *1124 fraudulently induced, that one signature was forged and question the authenticity of others. Given the very limited development of the trial court record, the summary judgment was premature.
For the reasons stated, the summary judgments are reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] The operative language was:

LAKES OF THE MEADOW VILLAGE HOMES CONDOMINIUM NO. ONE MAINTENANCE ASSOCIATION, INC., a Florida corporation not-for-profit ("Association") for an[d] in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration, the sufficiency of which and receipt from ARVIDA/JMB PARTNERS, a Florida general partnership ("Arvida"), is hereby acknowledged hereby remises, releases, acquits, satisfies and forever discharges Arvida of and from any of [sic] all actions, causes of action, suits, debts, dues, sums of money, accounts, accountings, covenants, contracts, controversies, agreements, promises, damages, judgments, claims, demands whatsoever, in law or in equity, which Association ever had, now has, or which Association hereafter can, shall or may have, against Arvida for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of these presents; provided, however, that this Release shall not apply to claims arising from matters which come into existence solely after the date hereof.
The foregoing shall include, but not be in any manner be [sic] limited to, all matters pertaining to or connected with the operation, management or administration of Association by Arvida and the development, improvement, construction, maintenance, repair, operation or use of that certain property located in Dade County, Florida, commonly known as "Lakes of the Meadow Village Homes Condominium No. One" and legally described as such in the records of Dade County, Fl.
As used herein, the terms "Association" and "Arvida" shall include within their respective meanings all of their past, present and future shareholders or members (as applicable), partners, officers, directors, employees, agents, contractors, subcontractors, predecessors, successors, assigns and designees.
[2] The developer also moved to strike the amended complaint as a sham, likewise on the theory that the releases barred the action. The motion to strike as sham was denied.
[3] The developer, however, created, or was in a position to know about, the defects.
[4] This argument tends to support the proposition that the releases were only intended to reach punch list items and other known claims, not latent defects.